# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 24, 2012

No. 11-10835

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JOSE VARGAS-SOTO,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Jose Vargas-Soto challenges his sentence on appeal, which was calculated using an enhancement applicable to aggravated felonies. Vargas-Soto also appeals the district court's upward departure from the Guidelines sentence for the crime of illegal reentry. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 20, 2011, Vargas-Soto pled guilty to one count of illegal reentry after deportation in violation of 18 U.S.C. § 1326. Vargas-Soto's Pre-sentence Investigative Report ("PSR") calculated a final offense level of 21: a base level of 8 under U.S.S.G. § 2L1.2(a) (2010), a 16-level enhancement for an aggravated felony conviction of manslaughter under U.S.S.G. § 2L1.2(b)(1)(A), and a 3-level

No. 11-10835

reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  After the other relevant calculations were made, for which no claim of error is alleged, a guidelines imprisonment range of 77 to 96 months was determined.

The PSR noted that an upward departure could be warranted pursuant to U.S.S.G. § 4A1.3(a) if the district court determined that Vargas-Soto's criminal history category substantially under-represented the seriousness of his criminal history and the likelihood of recidivism; the PSR identified the lack of deterrence of past sentences of imprisonment and continued criminal activity.  The district court overruled Vargas-Soto's objection that an above-guidelines sentence would be greater than necessary to achieve the sentencing goals of Section 3553(a) and sentenced Vargas-Soto to 180 months imprisonment and 3 years of supervised release.  Vargas-Soto timely appealed.

Vargas-Soto argues the district court's adoption of a 16-level enhancement for his manslaughter conviction, a conviction that the district court treated as an aggravated felony, constituted plain error.  Additionally, Vargas-Soto argues the sentence imposed by the district court is unreasonable and the district court abused its discretion in upwardly departing from the guidelines range for the crime of illegal reentry.

## DISCUSSION

When a defendant fails to preserve an error by specific objection in the trial court, an appellate court reviews the district court's legal conclusions for plain error.  *Puckett v. United* States, 556 U.S. 129, 135 (2009).  Plain error review requires the defendant to demonstrate that (1) the district court erred, (2) the nature of the error was plain or obvious, and (3) the defendant suffered substantial prejudice.  *Id.*  If the court resolves these factors in the defendant's favor, the court can correct the error "only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings" or "in order to

2

No. 11-10835

prevent a manifest miscarriage of justice." *Id.* (internal quotations omitted); *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012).

A defendant need not show that the specific factual and legal scenario has been addressed but must at least show error in the "straightforward applications of case law." *United States v. Ellis*, 564 F.3d 370, 377 (5th Cir. 2009). By contrast, an error is not plain if it requires the extension of precedent. *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010).

A.    *Aggravated Felony Enhancement*

Vargas-Soto revealed his understanding that the maximum penalty for the crime of illegal reentry is 20 years by signing a factual resume and by statements at his plea colloquy. The statutory maximum applies if a defendant was convicted of an aggravated felony, whereas a 10-year maximum applies for a conviction of a non-aggravated felony. 8 U.S.C. § 1326(b)(1)-(2). If Vargas-Soto was convicted of an aggravated felony, the district court's sentence of 15 years imprisonment is valid.

Under 8 U.S.C. § 1101(a)(43)(F), an "aggravated felony" includes a "crime of violence" defined in 18 U.S.C. § 16 as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Vargas-Soto argues that the Texas manslaughter statute does not require a defendant use, attempt to use, or threaten to use physical force, making Section 16(a) inapplicable. *See United States v. Gracia-Cantu*, 302 F.3d 308, 311 (5th Cir. 2002). He also argues Section 16(b) requires a substantial likelihood that a defendant will intentionally use force against another to commit the

crime, as opposed to just a reckless use of force as in a manslaughter offense. *See United States v. Chapa-Garza*, 243 F.3d 921, 927 (5th Cir. 2001). The State does not argue that Section 16(a) is applicable, but it does present an argument as to why Section 16(b) is applicable.

It is not necessary for us to resolve the dispute. Error that is plain will not require reversal unless the defendant's substantial rights were affected. We must be shown "a probability sufficient to undermine confidence in the outcome" that but for the erroneous categorization of manslaughter as a crime of violence, Vargas-Soto would have received a lesser sentence. *United States v. Infante*, 404 F.3d 376, 395 (5th Cir. 2005). That probability does not exist here because Vargas-Soto was also convicted of another crime arising out of the same incident, that is an aggravated felony: evading arrest using a motor vehicle.

Neither the PSR nor the district court specifically relied on the evading-arrest conviction. To evaluate that offense, we granted the government's unopposed motion to supplement the record with the state-court records that are appropriate for us to consider: the charging instrument, judicial confession, and judgment relating to the conviction. *See United States v. Martinez-Vega*, 471 F.3d 559, 561 (5th Cir. 2006). These documents support that the offense was evading arrest by use of a motor vehicle. Although no Texas statute of conviction was cited, the elements of the offense set out in the indictment are the same as those under Tex. Penal Code Ann. § 38.04(b)(1). We recently held that a conviction under Section 38.04(b)(1) is a crime of violence under 18 U.S.C. § 16(b), and therefore an aggravated felony. *United States v. Sanchez–Ledezma*, 630 F.3d 447, 451 (5th Cir. 2011), *cert. denied*, 131 S. Ct. 3024 (2011).

We have permitted supplementation of the record when the district court determined that a prior state conviction met a Sentencing Guidelines category for an enhancement but the record did not contain the necessary state-court documents to support that finding. *United States v. Garcia-Arellano*, 522 F.3d

477, 480 (5th Cir. 2008).  There, we supplemented the record to determine whether a prior conviction was for a drug-trafficking offense that would allow a 12-level enhancement under Section 2L1.2 of the Guidelines; the district court had relied solely on the PSR.  *Id.* at 479-80.

It is true that in the present case, the supplemental documents explain an entirely different offense than the one on which the district court relied.  The offense, though, was listed in the PSR.  We conclude that supplementation for this purpose is an appropriate application of the caselaw.  To explain, we start with the principle that we may examine state-court documents to support an enhancement even when it appears the district court did not examine them. *Martinez-Vega*, 471 F. 3d at 561.  We next note that we conduct *de novo* review of the applicability of an enhancement under the Sentencing Guidelines.  *United States v. Girod*, 646 F.3d 304, 317 (5th Cir. 2011).  Thus we always examine these state-court records to make our own determination of whether they support an enhancement.  In this case, the records we are examining concern a prior offense the district court could have relied upon to support the sentencing enhancement that was given.

We are not interfering with the district court's broad discretion over sentencing.  The district court gave Vargas-Soto a sentencing enhancement for having committed an aggravated felony.  At the hearing, the court entered into the record, as Court's Exhibit 1, a copy of the police report underlying the crime of evading arrest, which also supported one count of manslaughter, one count of intoxicated assault, and two counts of failing to stop and render aid.  Neither party had offered that document.  The court noted that Vargas-Soto "sped off with headlights off . . . at a high rate of speed approaching 80 to 100 miles per hour," and chastised Vargas-Soto for attempting "to drive off and try to escape." The court characterized these facts as "reprehensible behavior, and my sentence will take account of that."  We are convinced that the aggravated felony of

No. 11-10835

evading arrest, listed in the PSR and discussed by the district court, may properly be used as an alternative basis for the enhancement.

In summary, even if categorizing Vargas-Soto's manslaughter conviction as a crime of violence were plain error, there was no substantial harm because his separate conviction for evading arrest would have been sufficient to support the same 16-level sentencing enhancement.

B.    *Upward Departure*

Vargas-Soto asserts that the district court abused its discretion in imposing a sentence of 180 months, an upward departure from the guidelines imprisonment range of 77 to 96 months.

In accordance with U.S.S.G. § 4A1.3(a)(4)(B) the district court moved incrementally down the sentencing table and ultimately determined a sentence of 180 months was "sufficient but not greater than necessary . . . to protect the public from the defendant and his high risk for recidivism." The district court determined Vargas-Soto's criminal history score under-represented the seriousness of his criminal history and the likelihood that he would commit future crimes. The district court pointed to factors including repetitive illegal entry, lack of deterrence, and continued criminal activity.

The district court also explained that "this manslaughter conviction plays a significant role in my thinking as to the need for an upward departure" and entered into the record the police report of the events underlying the manslaughter and evading arrest convictions. The district court noted particular facts including Vargas-Soto's intoxication ("rip-roaring drunk") and probable lack of headlights in the initial collision. Also mentioned was Vargas-Soto's flight from the scene and attempted escape from police, which included driving off at a speed approaching 80 to 100 miles per hour with his headlights off. The district court concluded that the foregoing actions were "reprehensible behavior, and my sentence will take account of that." The district court also

6

noted the "shockingly light sentence" that Vargas-Soto received for manslaughter.

It was proper for the court to consider the nature of Vargas-Soto's criminal history, including the circumstances of his prior convictions for manslaughter and evading arrest. 18 U.S.C. § 3553(a); *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

AFFIRMED.