# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 11, 2013

No. 12-50702

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JAVIER HORACIO MARTINEZ-HERRERA,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:09-CR-3201-1

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Javier Horacio Martinez-Herrera was convicted by a jury of conspiracy to possess cocaine with intent to distribute, possession of cocaine with intent to distribute, conspiracy to commit murder in a foreign country, and illegal re-entry. On appeal, Martinez challenges the sufficiency of the evidence supporting his conspiracy to commit murder conviction, introduction of prior bad acts evidence and photographs of the murder victim, drug quantity attributed to him at sentencing, and the explanation for the sentence imposed. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50702

Martinez was indicted and tried in the El Paso Division of the United States District Court for the Western District of Texas. The drug conspiracy involved the use of vehicles containing secret compartments. Different drivers used the vehicles to transport drugs across the Mexican border to cities including Memphis and Kansas City.

The conspiracy to murder charge stemmed from an incident in which Martinez's wife was apprehended at an El Paso border entry point for possession of cocaine. Based on information from his wife's lawyer, specifically a tape recording of an anonymous phone call, Martinez believed that Marta Ramirez-Gutierrez had "snitched" on his wife, such that border officials were waiting for her at the border with drug dogs. Marta's murder was orchestrated by Martinez, his mother Yolanda Herrera de Martinez ("Yolanda"), Ellen Nallely Espinoza-Reyes ("Nallely"), and "Chucky." Chucky hired unnamed hitmen in Juarez, Mexico where Marta lived, and Martinez agreed to pay the hitmen $1000.

## DISCUSSION

### I.    *Sufficiency of the Evidence*

Martinez argues there was insufficient evidence to establish he conspired to murder Marta. When a defendant preserves a challenge to the sufficiency of evidence as Martinez did, we review the denial of a motion for a judgment of acquittal *de novo*. *United States v. Curtis*, 635 F.3d 704, 717 (5th Cir. 2011). We consider the evidence in the light most favorable to the jury verdict to determine whether a rational jury could have found guilt beyond a reasonable doubt. *Id.* at 717-18.

To support conviction for conspiracy to murder under 18 U.S.C. § 956(a)(1) the government must prove: (1) an agreement by the defendant with at least one person to commit murder; (2) "the defendant willfully joined the agreement with the intent to further its purpose;" (3) one of the conspirators committed an overt act in furtherance of the conspiracy; and (4) one of the conspirators was within

2

No. 12-50702

United States jurisdiction at the time of the agreement. *United States v. Wharton*, 320 F.3d 526, 537-38 (5th Cir. 2003).

The government presented recordings of several phone calls variously involving Martinez, Yolanda, Nallely, and Chucky. Written English translations of these primarily Spanish conversations were shown to the jury, and an FBI agent testified to explain the recorded conversations. The recordings revealed Martinez labeling Marta "a snitch," saying "we need to have her disappear," and discussing sending a $1000 payment once the killing was confirmed. Martinez also discussed how to locate Marta and the method of killing. On the day of the shooting, Nallely told Martinez to watch a particular news program on which he saw a report on Marta's shooting. Shortly after watching that report, Martinez said, "what I asked to be done just came out. They already resolved it for me." At trial, Martinez presented alternative explanations for his recorded statements. He did not object, though, to any specific translation or present alternative translations.

Affording the jury verdict "the benefit of all reasonable inferences and credibility choices," we conclude that the evidence was sufficient to support a conviction for conspiracy to murder. *Curtis*, 635 F.3d at 718.

II. *Admission of Prior Bad Acts*

On appeal, Martinez challenges the admission of evidence as to five sets of prior bad acts, namely conversations regarding: (1) Marta's murder; (2) Martinez's cartel involvement and contacts; (3) the forcible collection of money from a third party, "Saul;" (4) a currency seizure from Rubi Nallely Ortega-Herrera; and (5) an invitation to purchase AK-47s. Because he failed to object at trial, Martinez properly concedes that admission of the foregoing evidence is reviewed for plain error. Plain error review requires a defendant to demonstrate error, which was plain or obvious, that affected the defendant's substantial rights. *United States v. Vargas-Soto*, 700 F.3d 180, 182 (5th Cir. 2012). If such

error is demonstrated, we have discretion to correct the error if it "affects the fairness, integrity, or public reputation of judicial proceedings or in order to prevent a manifest miscarriage of justice." *Id.* (quotations omitted).

Evidence intrinsic to the crimes charged is generally admissible. *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). Evidence is intrinsic when it is "inextricably intertwined" with or "a necessary preliminary to the crime charged," or when it is "part of a single criminal episode" with the charged act. *Id.* Only if an act is extrinsic do we consider whether that act meets the requirements of Federal Rule of Evidence 404(b). *Id.* at 690.

The conversations regarding Marta's murder describe the crime of conspiracy to murder: an agreement between the conspirators, Martinez's voluntary participation, and overt acts coordinating the actual murder. *See* 18 U.S.C. § 956(a)(1). These conversations are "inextricably intertwined" with the charged offense as they offer direct proof of the elements of conspiracy to murder. *Sumlin*, 489 F.3d at 689. So too the drug conspiracy charge permitted proof of acts of the conspirators occurring during the life of the conspiracy. *United States v. Watkins,* 591 F.3d 780, 785 (5th Cir. 2009). Those acts included the collection of drug money from Saul and the currency seizure. Evidence of the structure of the conspiracy, including Martinez's question about and references to the cartels for which he worked, was also intrinsic proof of the conspiracy. *Id.* This evidence was properly admitted as intrinsic to the crimes charged.

The evidence as to the AK-47s included a phone call in which Martinez's brother asked whether he wanted to purchase cheap AK-47s. Martinez declined. An FBI agent testified that guns are often used to commit drug crimes. We see no need to decide whether the evidence as to these weapons was admissible under Rule 404(b). Even if it was not, we conclude that under plain error review the admission did not affect Martinez's substantial rights or raise "a reasonable possibility that this improperly admitted evidence contributed to the conviction."

*Sumlin*, 489 F.3d at 691. The testimony about the AK-47s was brief; in fact, Martinez rejected the invitation to make a purchase. Additionally, the other evidence against Martinez was overwhelming. *See United States v. Williams*, 957 F.2d 1238, 1243 (5th Cir. 1992). Therefore, admission of evidence as to the AK-47s was not reversible plain error.

III.    *Photographs of the Murder Victim*

At trial, the government introduced into evidence seven photographs of the murder victim. Five photographs showed Marta alive, lying in a hospital bed, bandaged, with medical tubes attached to her. Martinez objected that the photographs should be excluded as substantially more prejudicial than probative under Federal Rule of Evidence 403. "This court reviews a district court's evidentiary rulings for an abuse of discretion." *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009).

The photographs are not "gruesome" or "shocking" so as to cause undue prejudice. *United States v. Fields*, 483 F.3d 313, 355 (5th Cir. 2007). The admission of "photographs of the victim's [dead] body in a murder case ordinarily does not rise to an abuse of discretion where those photos have nontrivial probative value." *Id.* The photographs possessed probative value in proving overt acts committed in furtherance of the conspiracy. The prejudice of the photographs did not "substantially outweigh the probative value of the evidence," and the district court did not abuse its discretion in admitting the photographs. *See id.* at 354.

IV.    *Attribution of Cocaine*

At sentencing the district court determined Martinez was responsible for 292.6 kilograms of cocaine. The district court must find facts relevant to the Sentencing Guidelines by a preponderance of the evidence. *United States v. Greenough*, 669 F.3d 567, 576 (5th Cir. 2012). Because Martinez objected to this attribution at sentencing, we review this factual determination for clear error.

No. 12-50702

*See id.* "There is no clear error if the district court's finding is plausible in light of the record as a whole." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

The Presentence Investigation Report ("PSR") reflected quantities of 292.6 and 12 kilograms seized. The PSR also revealed Martinez's admission in a recorded phone call to 5 kilograms and in a post-arrest interview to participating in 30 to 40 transactions with an average cocaine weight of 6 kilograms. These admissions by themselves constitute evidence of between 185 to 245 kilograms. In making its factual findings, the district court "may consider any evidence which bears sufficient indicia of reliability to support its probable accuracy." *United States v. Nava*, 624 F.3d 226, 230-31 (5th Cir. 2010) (internal quotation omitted). Sufficient indicia of reliability are generally found in PSRs. *Id.* at 231. A defendant bears the burden of showing that this evidence is "materially untrue, inaccurate or unreliable." *Id.* Further, trial testimony of various FBI agents supported the drug quantities enumerated above, and the trial record reflected numerous other quantities of cocaine that were part of the same conspiracy.

The quantity of drugs attributed to a defendant at sentencing need not be limited to drugs actually seized and can be based on estimates. *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005). Considering the record as a whole, the district court did not clearly err in attributing 292.6 kilograms of cocaine to Martinez as relevant conduct.

V.    *Sentence*

The district court sentenced Martinez to consecutive life sentences on four of the five charges of conviction and to 24 months on the illegal re-entry count. On appeal, Martinez argues the district court committed error by failing to adequately explain the reasons for imposing the sentence under the factors set out in 18 U.S.C. § 3553.

6

No. 12-50702

Our review is for plain error because Martinez did not object to the explanation of the sentences before the district court. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).

The district court stated that it had read the PSR and overruled Martinez's objections. The court also spoke to the defendant in Spanish immediately after sentencing him, suggesting his comments were among the court's reasons:

> What you didn't do for that lady that you had killed is something that I am going to do for you. Yes, specifically, in terms of you being guilty of all the charges that were brought against you, I'm going to appoint a lawyer so that you can appeal. That way, you have no doubt regarding the innocence that you are claiming.
>
> You said you didn't do it, and you acted like you didn't do it, but it's all recorded in all of the conversations that we have as evidence. And, that way, a higher court, a court that's over me, can confirm the verdict that was actually rendered.

We conclude that there was no reversible plain error in the manner in which the court explained the sentence. The court gave some explanation implicitly referring to the seriousness of the crime, which also suggests relevant focus on deterrence and protecting the public. *See* 18 U.S.C. § 3553(a)(2). Martinez does not argue the sentence is outside the correctly calculated Guidelines range. Any failure to make a detailed explanation for a sentence "is diminished when the sentence is within the Guidelines range." *Mondragon-Santiago*, 564 F.3d at 365. Martinez has not shown that a fuller explanation would have affected his sentence, and accordingly the failure to explain the sentence more fully did not affect Martinez's substantial rights.

AFFIRMED.