**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 3, 2013

Lyle W. Cayce
Clerk

No. 12-50329

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LUIS ROEL CASTANEDA A/K/A "PAJARO,"

Defendant - Appellant.

Appeals from the United States District Court
for the Western District of Texas
USDC No. 2:10-CR-361-2

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Following a jury trial, Luis Castaneda was convicted of conspiracy to import cocaine and conspiracy to possess cocaine with intent to distribute. Castaneda appealed, arguing that there was insufficient evidence to establish his identity as Pajaro and that the district court abused its discretion in denying the motion for new trial based on the changed testimony of a witness post-trial.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

No. 12-50329

Because the record presents sufficient evidence to support the verdict and the district court did not abuse its discretion in not granting the motion for a new trial, we AFFIRM.

I.

On February 24, 2008, Aurelio Cortinas was driving a truck when he was stopped by Texas Trooper Esteban Luna. That stop ultimately led to the discovery of more than 320 pounds of cocaine and Cortinas was arrested. Cortinas told agents that for the preceding ten months, he had worked for an organization transporting cocaine from Mexico to the United States. He reported that his immediate boss went by the nickname "Pajaro." With this information, Santiago Gamez, a Drug Enforcement Administration ("DEA") intelligence analyst, generated a photo lineup using driver's license photos of subjects he believed could have been Pajaro. The lineup included a driver's license photo of Castaneda taken in 1988. Agents showed the photo lineup to Cortinas, who first identified Castaneda's brother, Eddie, as Pajaro, but then changed his mind. Cortinas ultimately identified the photo of Castaneda as Pajaro. He initialed Castaneda's photo and wrote the phrase, "recibe la droga y la distribute," which translates to, "he receives the drug and distributes it." Eduardo Barrientos, another man involved in the cocaine operation in a capacity similar to that of Cortinas, also identified Castaneda as Pajaro in the photo lineup.

On the day Cortinas was arrested, the agents discovered a phone in his possession. Agent Gamez identified numbers of interest in the phone's contacts, one of which was associated with Pajaro. Cortinas and Barrientos both identified the number associated with Pajaro as Castaneda's number. Agent

No. 12-50329

Gamez subpoenaed telephone records, which revealed that between January 23 and February 24, 2008, seventeen contacts were made between the phone number identified as that of Castaneda with the phone Cortinas was carrying. Six of these contacts took place on the day of the cocaine seizure. The phone carried by Aurelio Cortinas was subscribed to Emmanuel Cortinas and the phone associated with Pajaro was subscribed to Jorge Lopez. The record showed that the phone registered to Jorge Lopez was a Boost prepaid phone. Agent Gamez testified that, because it was a prepaid phone, it was possible that the subscriber information was incorrect. Both Cortinas and Barrientos corroborated this statement by testifying that the organization routinely used prepaid phones because the phone would not be registered under their names. Both testified that these prepaid phones were changed or thrown away every two to three weeks to avoid detection.

At trial, both Barrientos and Cortinas were called as witnesses for the government. Though both testified that Pajaro was a part of the drug organization, both declined to identify Castaneda as Pajaro at trial. Later in his testimony, Cortinas admitted that he was afraid "because [he was] testifying against someone, against an organization in Mexico." Also at trial, the government introduced a Joint Automated Booking System ("JABS") photo of Castaneda when he was arrested. The photo was taken on April 26, 2010. Agent Gamez testified that the name, Luis Roel Castaneda, and date of birth, August 24, 1972, were the same on both the JABS photo and the driver's license photo used in the pretrial photo lineup shown to Cortinas and Barrientos. In the courtroom, Agent Gamez identified Castaneda as the person in the JABS photo.

3

No. 12-50329

At the conclusion of the trial, the jury returned a verdict of guilty on both counts. Castaneda filed a motion for new trial, contending that subsequent to his trial and conviction, the government advised him that Cortinas informed the government that Castaneda was not Pajaro, but an older brother of Pajaro, known as Casco. The district court held a hearing on the matter on January 31, 2012. At the hearing, Cortinas testified that Castaneda was involved in the conspiracy, but his nickname was not Pajaro and that Castaneda was Pajaro's brother, Casco. Cortinas also testified that he did not tell agents, before or after trial, that Pajaro was Castaneda. The district court denied the motion for new trial, finding that Cortinas's changed testimony after trial was not credible and would not result in an acquittal if presented at a new trial. The district court then sentenced Castaneda to a term of life on each of the two counts to be served concurrently with credit for time served. Castaneda timely appealed.

II.

Castaneda makes two arguments on appeal. First, he raises a sufficiency of the evidence claim. Second, he argues that the district court abused its discretion in denying his motion for a new trial. We first address Castaneda's sufficiency of the evidence claim.

Because Castaneda moved for judgment of acquittal at the close of the case, he preserved his sufficiency claim for appellate review. *United States v. Ferguson*, 211 F.3d 878, 882 (5th Cir. 2000). In such a case, appellate courts review a denial of a motion for acquittal *de novo*. *United States v. Olguin*, 643 F.3d 384, 393 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 432 (2011), *and cert. denied*, 132 S. Ct. 439 (2011). On a challenge to the sufficiency of the evidence to support a criminal conviction, "the relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court's review of the sufficiency of the evidence is "highly deferential to the verdict." *United States v. Gulley*, 526 F.3d 809, 816 (5th Cir. 2008). We must "accept credibility choices that support the jury's verdict, and we may not reweigh the evidence." *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999). Thus, the inquiry is "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *Gulley*, 526 F.3d at 816.

Castaneda makes several arguments in support of his sufficiency claim. He first argues that the government did not provide an in-court identification of Castaneda as Pajaro.[1] However, an in-court identification is not necessary

---

[1] Castaneda also argues that the pretrial identifications by Cortinas and Barrientos cannot be considered sufficient evidence because "the pretrial identification may have been a product of the unfavorable conditions and questionable methods employed by law enforcement personnel." Castaneda never filed a motion to suppress these pretrial identifications before or during trial. This argument was not raised below, thus it is deemed waived pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure. *United States v. Scoggins*, 599 F.3d 433, 448 (5th Cir. 2010) ("There is divided authority in the circuits as to 'whether arguments not raised in a motion to suppress are waived or are merely forfeited and subject to plain-error review.' . . . Our circuit follows the former view, holding that 'a defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal.'").

"Nonetheless, our cases identifying waiver have often proceeded to evaluate the issues under a plain error standard for good measure." *Scoggins*, 599 F.3d at 448. The Supreme Court has identified four requirements for reversing a trial court based upon plain error review: (1) "there must be an error or defect—some sort of [d]eviation from a legal rule—that has not been intentionally relinquished or abandoned"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights"; and (4) "if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009). Castaneda has not asserted that there was a particular defect with the pretrial identification, only that there "may have

for conviction. *United States v. Royals*, 777 F.2d 1089, 1091 (5th Cir. 1985) ("[Appellant] argues that no witness pointed him out in the courtroom. Identity, however, may be proved by inference and circumstantial evidence."). Furthermore, even though no in-court identification is necessary for conviction, Agent Gamez made an in-court identification of Castaneda. After comparing the two photos described above, Agent Gamez identified Castaneda in the courtroom as the person in the driver's license and JABS photos.

In-court identification is only one piece of all the evidence presented to the jury. Other circumstantial evidence presented could have led a reasonable jury to find Castaneda guilty of the charged crimes. Both Cortinas and Barrientos testified that they were employed by an organization to transport cocaine. Both testified that a person named Pajaro was the person to whom they delivered the cocaine, who directed them in unloading locations in Houston, and who helped unload the cocaine. Both witnesses confirmed on the stand that they identified Castaneda's photo as Pajaro in a pretrial photo lineup although they did not identify him as Pajaro at trial.

To the extent that Castaneda complains that his photo in the pretrial photo lineup was "hard to see," we must defer to the jury's assessment of the evidence. The government submitted to the jury the photo used in the pretrial photo lineup, which came from a driver's license bearing Castaneda's name and date of birth, and the JABS photos, which also listed Castaneda's name and date of birth. The jury weighed the evidence and could reasonably conclude

---

been unfavorable conditions." Accordingly, we find that there is no plain error on the issue of the pretrial identification.

that Castaneda was the man in those photographs.

Second, Castaneda argues that the government did not provide sufficient evidence of his identity through the records from Cortinas's phone. The government presented testimony that could have led the jury to reasonably find that the phone associated with Castaneda belonged to him even though it was registered under a different name. Both Cortinas and Barrientos testified to the jury that the organization they worked for routinely used prepaid phones for the very purpose that they would not need to be registered under their names. Both testified that these prepaid phones were changed or thrown away every two to three weeks to avoid detection. The jury was given the opportunity to weigh the evidence and our inquiry is "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *Gulley*, 526 F.3d at 816.

Finally, Castaneda argues that Cortinas's and Barrientos's inconsistent testimonies indicates that they were lying about his identity as Pajaro and that they were generally not credible witnesses. However, "[i]t is not the appellate function to judge the credibility of witnesses." *United States v. Murray*, 527 F.2d 401, 410 (5th Cir. 1976). Instead, the jury is free to weigh the credibility of conflicting testimonies and determine what to believe. *Id.* It is not the court's role to question that judgment. *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001) ("[The jury] retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses."); *United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999) ("It is the sole province of the jury, and not within the power of this Court, to weigh conflicting evidence and evaluate

No. 12-50329

the credibility of witnesses.").

For these reasons, Castaneda's sufficiency challenge fails.

III.

Next we turn to Castaneda's claim that the district court wrongfully denied his motion for a new trial. We review a denial of a motion for a new trial for abuse of discretion. *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997). Federal Rule of Criminal Procedure 33 provides that a motion for a new trial must demonstrate that: (1) there is newly discovered evidence and it was unknown to Castaneda at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by Castaneda; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal. *United States v. Franklin*, 561 F.3d 398, 405 (5th Cir. 2009). All elements need to be proved in order to receive a new trial based on newly discovered evidence. *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004). Motions for new trial are generally "not favored, and are granted only with great caution." *O'Keefe*, 128 F.3d at 898.

Castaneda argues that Cortinas's post-trial testimony that Castaneda was not Pajaro but was Casco, is newly discovered evidence that, were the district court to grant a new trial, would acquit Castaneda. However, the district court did not abuse its discretion in denying the motion for a new trial when it found that Cortinas's post-trial testimony was not newly discovered and was merely cumulative and impeaching. *See Mesarosh v. United States*, 352 U.S. 1, 9 (1956); *United States v. Villarreal*, 324 F.3d 319, 326 (5th Cir. 2003) (upholding

8

district court's denial of motion for new trial when it found that testimony "could have served no evidentiary purpose other than to impeach the testimony" of a government witness); *United States v. Reedy*, 304 F.3d 358, 372 (5th Cir. 2002) (upholding district court's denial of motion for new trial based on newly discovered impeachment evidence); *United States v. Pena*, 949 F.2d 751, 758 ("Evidence which merely discredits or impeaches a witness' testimony does not justify a new trial.") (5th Cir. 1991). *See also United States v. Riley*, 544 F.2d 237, 240 (5th Cir. 1976) (holding that cumulative evidence is an insufficient basis for a new trial). Moreover, Cortinas's post-trial testimony does not exonerate Castaneda. Cortinas continued to testify that Castaneda was involved in the drug conspiracy.

Because the evidence was sufficient to sustain the jury's verdict and the district court did not abuse its discretion in denying Castaneda's motion for new trial, we AFFIRM.