# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31219
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

QUENSHEY N. MITCHELL, Also Known as Rafiki Smith,
Also Known as Q. Mitchell, Also Known as Cuz Mitchell,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CR-297-1

Before DAVIS, SMITH, and WIENER, Circuit Judges.

PER CURIAM:*

Quenshey Mitchell was convicted by a jury of conspiracy to distribute

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-31219

and possession with intent to distribute heroin, 21 U.S.C. § 846; conspiracy to tamper with a witness, 18 U.S.C. § 1512(k); witness tampering, 18 U.S.C. § 1512; conspiracy to retaliate against a witness, 18 U.S.C. § 1513(f); retaliation against a witness, 18 U.S.C. § 1513; and conspiracy to obstruct an official proceeding, 18 U.S.C. § 1512(k).  He was sentenced to life imprisonment on counts one through five, 240 months of imprisonment on count six, supervised release for 10 years on count one, three years of supervised release on the remaining counts, and restitution of $18,000.

Mitchell contends that the evidence was insufficient to support his conviction on counts two through five related to the murder of the cooperating witness, Christina Williams, because the record is "devoid of any evidence that Defendant was present at the murder scene or that he ever discussed her murder with anyone."  Mitchell does not dispute that the government established his guilt on the heroin conspiracy in count one.  He claims that the proof of his connection to the murder on July 29, 2010, depended entirely on tying him to his use of the telephone number ending in 5545 on that night.  He asserts that the government's reliance on telephone records and "Historical Cell Site Analysis" is based purely on speculation without adequate evidentiary support and does not establish his involvement in the murder beyond a reasonable doubt. He concludes that a judgment of acquittal should have been granted as to counts two through five and a new trial granted as to counts one and six because of the prejudicial impact of trying the heroin conspiracy and the related obstruction-of-justice charge with the murder charges.[1]

"[R]eviewing courts must affirm a conviction if, after viewing the

---

[1] Mitchell has failed to brief any argument related to his request for a new trial on counts one and six, so he has waived that issue. *United States v. Stalnaker*, 571 F.3d 428, 439-40 (5th Cir. 2009).

evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir.) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), *cert. denied*, 135 S. Ct. 170 (2014). Mitchell made the same arguments in timely filed post-verdict motions for a judgment of acquittal or new trial, thus preserving *de novo* review of this issue. *See* FED. R. CRIM. P. 29(c); *United States v. Allison*, 616 F.2d 779, 784 (5th Cir. 1980).

A conspiracy conviction does not depend on the identification of the co-conspirators, and co-conspirators do not need to be identified as long as evidence supports the conclusion that a co-conspirator did exist and that the defendant did conspire with him. *United States v. Moree*, 897 F.2d 1329, 1332 (5th Cir. 1990). The agreement forming the basis of a conspiracy is rarely expressed and often cannot be proved by direct evidence and so may be inferred from circumstantial evidence. *United States v. Duncan*, 919 F.2d 981, 991 (5th Cir. 1990). The conspiracy counts required proof that Mitchell and at least one other person had an agreement to kill Williams with the intent to prevent her cooperation as a witness or to retaliate against her for her cooperation, that Mitchell knew of the unlawful purpose of the agreement, and that an overt act was undertaken by one of the conspirators toward carrying out the object of the conspiracy. *See United States v. Contreras*, 950 F.2d 232, 238 (5th Cir. 1991); *Vargas-Ocampo*, 747 F.3d at 303. Counts three and five charged Mitchell with aiding and abetting the same offenses. A conviction of aiding and abetting requires proof that the elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to help it succeed. *United States v. Pringler*, 765 F.3d 445, 449 (5th Cir. 2014), *cert. denied*,

135 S. Ct. 1000 (2015).

Mitchell's arguments selectively acknowledge only a portion of the evidence and dismiss the circumstantial, yet highly significant, cell phone toll records and Historical Cell Site Analysis evidence. Mitchell concedes that the evidence established his motive to kill Williams. He contends that the government failed to connect him "in any meaningful way to telephone numbers 5545, 1816 and 4943."

To the contrary, however, the recurring presence of the same fictitious 934 Avocado Avenue address on subscriber records of phones utilized by Mitchell during his drug-trafficking activities and during the murder, coupled with Los Angeles Police Detective Sean Hansen's analysis of the cell tower usage of phone numbers ending in 5545, 1816, and 4943 during July 2010, sufficiently identified Mitchell as the user of those phones. The 1916 iPhone number subscribed in Mitchell's name was included by Hansen in his cell site analysis as a known Mitchell telephone that used cell towers in similar places and at similar times as the 5545 and 4943 telephones during July 2010 and shortly before and on the evening of the murder.

Williams's cell phone was in contact, immediately before her murder, with two telephone numbers, 5545 and 1816, subscribed in false names with the same fictitious Avocado Avenue address. The telephone toll records and historical cellular tower activity for these two numbers revealed that 1816 made its last two telephone calls to a third number, 4943, immediately before and after a 911 call was made reporting the murder. The cellular tower analysis of 1816 revealed it to have been in the immediate vicinity of the murder scene at the time of the killing. The cellular tower analysis revealed that phone 4943 was in the Marina del Rey area of Los Angeles at the time of the murder. Melony Salvage, Mitchell's girlfriend, testified that Mitchell told her

he had texted Williams the night of her murder and that he was in Marina del Rey that evening. Further, other telephones linked to Mitchell, including 1916, Mitchell's iPhone subscribed in his name, showed cellular tower activity consistent with Mitchell's travel to Marina del Rey that evening. This evidence allowed the jury to reasonably infer that Mitchell was the user of 5545 and 4943 on the night of the murder.

This evidence, along with Mitchell's threats to Williams's father regarding what happens to snitches, allowed the jury reasonably to infer that Mitchell conspired with an unknown third person to lure Williams to a meeting where she was murdered while Mitchell remained in phone contact with that person while Mitchell was in Marina del Rey. The evidence is sufficient to demonstrate beyond a reasonable doubt that Mitchell conspired with and aided and abetted at least one other person to kill Williams on the night of July 29, 2010.

AFFIRMED.