# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50407

United States Court of Appeals
Fifth Circuit

**FILED**
August 17, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSE ELUID LUGO-LOPEZ, also known as Cochi Loco; EMILIO
VILLALOBOS-ALCALA, also known as La Tripa,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 2:13-CR-217-2

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit
Judges.

PER CURIAM:*

Jose Eluid Lugo-Lopez ("Lugo") and Emilio Villalobos-Alcala
("Villalobos") (collectively, the "Appellants") were convicted in the United
States District Court for the Western District of Texas for gun and drug
smuggling offenses. The district court sentenced Appellants to, *inter alia*, life

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

## No. 15-50407

imprisonment.    Appellants appealed, challenging the sufficiency of the evidence for conviction, the district court's admission of trial evidence, and the court's imposition of Appellants' life sentences.  We AFFIRM.

### I.

Appellants were charged in a Third Superseding Indictment with:  (1) conspiracy to possess with intent to distribute over 1000 kilograms of marijuana (Count 1); (2) conspiracy to import into the United States from Mexico over 1000 kilograms of marijuana (Count 2); (3) conspiracy to possess firearms in furtherance of a drug trafficking crime (Count 3); and (4) two counts of aiding and abetting the exportation from the United States of defense articles as defined under Category I of the United States Munitions List (Counts 4 and 5).[1]  Following a five-day jury trial, a jury found Appellants guilty on all counts.  The district court sentenced each Appellant to (1) life imprisonment on Counts 1 and 2; (2) 240 months' imprisonment on Count 3; and (3) 120 months' imprisonment on Counts 4 and 5.  Appellants timely appealed.

### II.

Appellants first challenge the sufficiency of the evidence with respect to the underlying conspiracy and aiding and abetting charges.  We review a sufficiency challenge *de novo* if properly preserved through a motion for judgment of acquittal at trial.  *See United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007).  "We will affirm the jury's verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were

---

[1] Appellants' five counts relate to the following statutory references: (1) 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 (Count 1); (2) 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1), and 963 (Count 2); (3) 21 U.S.C. § 924(o) (Count 3); and (4) 22 U.S.C. §§ 2778(b)(2), 2778(c), 22 C.F.R. Part 121, 123, 127, and  18 U.S.C. §§ 554(a), and 2 (Counts 4 and 5).

No. 15-50407

established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Salazar*, 66 F.3d 723, 728 (5th Cir. 1995), *abrogated in part by United States v. Sorrells*, 145 F.3d 744 (5th Cir. 1998). We neither review the weight of the evidence or the credibility of the witnesses. *Floyd*, 343 F.3d at 370.

Appellants preserved a sufficiency of the evidence claim in this case after moving for judgment of acquittal at the close of evidence; the court denied the motion. Accordingly, this preserved error is reviewed *de novo*. *See United States v. Anderson*, 174 F.3d 515, 522 (5th Cir. 1999).

A.

Lugo argues that evidence presented at trial was insufficient to support a conviction under Count 4 for aiding and abetting the exportation of firearms and ammunition from the United States. Specifically, Lugo contends that there is no evidence linking him with the August 7, 2012, seizure of firearms and ammunition from a Ford F-250 truck driven by co-conspirator Sarai Longoria-Rivas ("Longoria"), and seized by Border Patrol as Longoria was driving toward Eagle Pass, Texas. Relevant here, an offense under 18 U.S.C. § 554(a) for aiding and abetting the exportation of munitions from the United States (Count 4) requires proof that "the defendant knew he was dealing with ammunition that was intended for export and that the exportation was illegal." *United States v. Cardenas*, 810 F.3d 373, 374 (5th Cir. 2016) (per curiam). To establish that Lugo aided and abetted a violation of § 554(a), the Government

3

must show that "the elements of the substantive offense occurred and that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to help it succeed." *United States v. Mitchell*, 792 F.3d 581, 583 (5th Cir. 2015) (per curiam). Lugo contends that the Government failed to establish that he aided and abetted the attempted smuggling. His argument bears little weight.

At trial, witnesses testified to being given direct instructions from Lugo to make purchases in the aid of smuggling munitions and to transport weapons from the United States to Mexico; others were threatened with violence because of their involvement with the smuggling. Indeed, one of the Government's strongest witnesses, Julio Salazar ("Salazar"), testified at trial to Lugo's direct involvement in smuggling guns. *See United States v. Valdez*, 453 F.3d 252, 257 (5th Cir. 2006) ("[A] defendant may be convicted on the uncorroborated testimony of a coconspirator who has accepted a plea bargain unless the coconspirator's testimony is incredible."). Salazar testified that he reported back to Lugo and that he was individually responsible for driving a Ford F-250 truck from San Antonio, Texas, to Piedras Negras, Mexico, with forty to fifty assault rifles and fifteen to twenty handguns stored in the truck. Salazar had installed an external gas tank to the exterior of the Ford truck and returned it to Lugo prior to his trip.

Salazar also testified that Lugo orchestrated a separate smuggling: the loading of firearms into a vehicle that was seized from a woman in the summer of 2012; Lugo instructed Salazar to purchase an external gas tank for that Ford F-250 truck. Salazar testified that following the summer 2012 seizure of that Ford F-250 truck, Lugo informed Salazar that the load taken by police belonged to him. Salazar's testimony was corroborated by Longoria, who testified about the same agreement that involved Longoria picking up and

dropping off a Ford F-250 truck with an external gas tank attached to the bed of the truck in August of 2012. *See Valdez*, 453 F.3d at 259 (concluding that a rational jury could find ample evidence to support a conspiracy charge where each co-conspirator's testimony tended to corroborate the testimony of the other co-conspirators).

Finally, telephone call logs presented at trial also linked Lugo to the smuggling of firearms. Numerous phone calls were made between Longoria and Lugo leading up to the date of Longoria's arrest and Longoria testified to having been given Lugo's telephone number while she was smuggling firearms. *See id.* Here, each witness's testimony strengthened the link to Lugo.

B.

Villalobos argues that the Government presented insufficient evidence of his alleged participation in the conspiracies charged in Counts 1–3: conspiracy to possess with intent to distribute marijuana, conspiracy to import marijuana, and conspiracy to possess firearms in furtherance of a drug trafficking crime. To establish that a particular defendant possessed with intent to distribute, or conspired to import, more than 1000 kilograms of marijuana under Counts 1 and 2, the Government was required to prove the existence of a conspiracy, Villalobos's involvement in the conspiracy, and the requisite drug quantity (here, more than 1000 kilograms) involved in the conspiracy beyond a reasonable doubt. *See United States v. Turner*, 319 F.3d 716, 722–23 (5th Cir. 2003). The amount that is directly attributable to Villalobos is a matter that must be proven by a preponderance of the evidence at sentencing. *Id.* at 723.

"[A]n in-court identification is not necessary for conviction." *United States v. Castaneda*, 548 F. App'x 140, 143 (5th Cir. 2013). We have also held that "[a]lthough 'an uncertain in-court identification will not support a

conviction where that identification is the only evidence offered on the issue of identity,' such 'tentative nature of . . . identification is not fatal,' if there is other sufficient evidence of identity." *United States v. Guerrero*, 169 F.3d 933, 941 (5th Cir. 1999) (emphasis omitted).  However, where the "sole witness is unsure and there are no other connecting or corroborating facts or circumstances" the jury cannot find guilt beyond a reasonable doubt.  *United States v. Johnson*, 427 F.2d 957, 961 (5th Cir. 1970), *superseded by rule on other grounds in United States v. Nelson*, 242 F. App'x 164 (5th Cir. 2007).

Villalobos highlights hesitancy from a handful of witnesses in identifying him in court as "La Tripa," the nickname for the individual who many of the witnesses had testified had been involved in the conspiracies. Notwithstanding Villalobos's attempt to hide the court's eyes from the numerous other in-court identifications of him, several witnesses positively identified Villalobos as "La Tripa."  Among them were (1) Salazar, who interacted with Villalobos on several occasions after having worked with Lugo to smuggle marijuana and firearms between the United States and Mexico; (2) Claudia Reyna, who testified to being physically and mentally abused by Villalobos as a result of her involvement in the drug smuggling; and (3) Julio Aguirre, who met Villalobos on multiple occasions when traveling to Mexico after crossing the Texas border with Leroy Milligan, one of Villalobos's main co-conspirators.  *See United States v. Bermea*, 30 F.3d 1539, 1554 (5th Cir. 1994) (concluding that the evidentiary weight of testimony or in-court identifications of defendants was adequate to find sufficient evidence of participation in conspiracy).

Villalobos draws the court's attention to the inability of three witnesses to initially identify him as "La Tripa" when first asked whether they saw "La Tripa" in court; this is not fatal.  He points to (1) Juan Rivas, who allegedly

had an agreement to smuggle guns and drugs on behalf of Villalobos and Lugo; (2) co-conspirator Milligan; and (3) Martha Perez-Lopez, Julio Salazar's mother and the individual who had previously rented her home in Mexico to Villalobos.  Both Rivas and Perez-Lopez, though with some initial uncertainty, identified Villalobos in court after having previously identified him as "La Tripa" during a photo lineup occurring closer in time to the conspiracy.  *See Simmons v. United States*, 390 U.S. 377, 384 (1968) ("[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."); *United States v. Keller*, 512 F.2d 182, 184 (3d Cir. 1975) (reversing a conviction based on a witness's uncertain identification of the defendant where the witness solely stated that the defendant looked "most like" the individual in question). Villalobos presented no evidence of an impermissibly suggestive pre-trial photo lineup and the witnesses ultimately provided clear testimony that Villalobos did in fact look like "La Tripa," but with slight physical appearance differences likely explained by the passage of time such as a change in facial hair.  Rivas and Milligan also identified photos found on Villalobos's wife's phone of him as "La Tripa." *See Castaneda*, 548 F. App'x at 143 ("In-court identification is only one piece of all the evidence presented to the jury. Other circumstantial evidence presented could have led a reasonable jury to find [defendant] guilty of the charged crimes.").  We give no weight to Villalobos's argument that the Government presented insufficient evidence to link him to the charged conspiracies.

Villalobos's second concern—that the prosecutor's leading questions tainted the witnesses' identifications of him—is similarly without merit. While

No. 15-50407

testifying, Milligan and Perez-Lopez noted that Villalobos's appearance was slightly different from the "La Tripa" that they had previously interacted with; nonetheless, each positively identified him based on their prior interactions. *But see United States v. Cooper*, 606 F.2d 96, 98 (5th Cir. 1979) ("The control of leading questions is within the discretion of the trial court. That discretion may be abused, of course, for example where the questions asked have the effect of supplying a witness with a 'false memory.'") (citations omitted). After having carefully reviewed the record, it is clear that other witnesses sufficiently identified Villalobos as "La Tripa" such that these identifications are independently reliable. Milligan and Perez-Lopez's testimony were unnecessary for a jury to have found guilt. *See Chapman v. California*, 386 U.S. 18, 24 (1967) (affirming a conviction where it was "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").

Finally, Villalobos argues that the Government failed to establish his responsibility for greater than 1000 kilograms of marijuana. This too is of no moment. As we have previously held, "the jury should determine the existence *vel non* of the conspiracy as well as any facts about the conspiracy that will increase the possible penalty for the crime of conviction beyond the default statutory maximum; and the judge should determine, at sentencing, the particulars regarding the involvement of each participant in the conspiracy." *Turner*, 319 F.3d at 722. The amount of marijuana that Villalobos is directly responsible for is not an issue for trial, but sentencing.

### III.

Villalobos next argues that the court erred in allowing evidence to be introduced that he is allegedly a member of the Zeta cartel and that introduction of this evidence violates Rules 403 and 404 of the Federal Rules of Evidence. "Generally, we review a trial court's decision to admit evidence

8

No. 15-50407

for abuse of discretion." *See United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005). Where a defendant did not object to the evidence on the basis presented on appeal, we review for plain error. *United States v. Williams*, 620 F.3d 483, 488–89 (5th Cir. 2010). To prevail under plain error review, an appellant must "show a forfeited error that is clear or obvious and that affects his substantial rights." *United States v. Andaverde-Tinoco*, 741 F.3d 509, 516 (5th Cir. 2013). If such error exists, we have discretion to correct the error, "but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Under Rule 404(b), evidence of a person's crimes, wrongs, or other acts is "not admissible to prove the character of a person in order to show action in conformity therewith." *Williams*, 620 F.3d at 489. "Intrinsic evidence, on the other hand, is generally admissible." *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). "Evidence is intrinsic when it is 'inextricably intertwined' with or 'a necessary preliminary to the crime charged,' or when it is 'part of a single criminal episode' with the charged act." *United States v. Martinez-Herrera*, 539 F. App'x 598, 601 (5th Cir. 2013) (quoting *Sumlin*, 489 F.3d at 689). Notwithstanding, "[e]vidence may be excluded if its probative value is substantially outweighed by . . . unfair prejudice." Fed. R. Evid. 403.

The Government's evidence established that Villalobos's membership in the Zeta cartel was relevant to his culpability for particular criminal acts intrinsic to the conspiracy and not indicative of Villalobos's character. *See Martinez-Herrera*, 539 F. App'x at 601 ("[T]he drug conspiracy charge permitted proof of acts of the conspirators occurring during the life of the conspiracy."); *see also United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991) ("Evidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule

404(b), and is therefore not barred by the rule."). In this instance, "[e]vidence of the structure of the conspiracy, including . . . question[s] about and references to the cartel[] for which [defendant] worked, [is] . . . intrinsic proof of the conspiracy." *Martinez-Herrera*, 539 F. App'x at 601. These acts and related references to the Zeta cartel included testimony that Villalobos directed action of co-conspirators to further the purpose of the Zeta cartel.

Villalobos's alleged cartel involvement was also probative of his association with the other members of the conspiracy, whom he attempts to dissociate himself from. *See United States v. Chavful*, 100 F. App'x 226, 231 (5th Cir. 2004) (upholding a conviction involving gang affiliation testimony where the probative value of the testimony outweighs any unfair prejudice). While testimony presented at trial about the violence and lawlessness of the Zeta cartel is prejudicial to Villalobos, it is not unfairly prejudicial. *Id.* Furthermore, any undue prejudice established from introduction of Villalobos's alleged cartel involvement was alleviated by mitigating trial testimony from witnesses: "Prosecutor: "[W]hether or not somebody is or is not a Zeta has absolutely nothing to do with whether or not they're guilty, is that correct." "[Witness]: "Correct."

Even assuming, without deciding, that the district court erred in admitting the challenged evidence, the error is harmless given other substantial evidence of Villalobos's guilt, including multiple in-court identifications and testimony linking Villalobos's conduct to the charged offenses. *See United States v. McCall*, 553 F.3d 821, 827 (5th Cir. 2008) (finding no plain error where the district court allowed the admission of "guilt-by-association" testimony because of strong evidence of defendant's guilt). The admission of evidence as to Villalobos's identity and his membership in the Zeta cartel was not reversible error.

No. 15-50407

IV.

Appellants' final challenge is to the district court's imposition of life sentences.    Appellants argue that their life sentences are greater than necessary to comply with the statutory purposes of sentencing under 18 U.S.C. § 3553, especially in light of Appellants' minimal criminal history.  Where, as here, a defendant fails to object to his sentence during sentencing, we review the district court's sentencing decision for plain error.  *See United States v. Ronquillo*, 508 F.3d 744, 748 (5th Cir. 2007).  We apply the same plain error standard of review when a defendant fails to object to the reasonableness of his sentence.  *Id.*  Plain error review is detailed *supra* in Section III.

We review sentences for procedural error and substantive reasonableness.  *See United States v. Bennett*, 485 F. App'x 673, 675 (5th Cir. 2012).  Sentences must be sufficient but not greater than necessary to comply with § 3553(a).  *See Kimbrough v. United States*, 552 U.S. 85, 91 (2007).  When the district court imposes a sentence within a properly calculated guidelines range and gives proper weight to the Guidelines and the § 3553(a) factors, we "will give great deference to that sentence" and "will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines" in light of the sentencing considerations set out in § 3553(a).  *United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir. 2008).  "Appellate review for substantive reasonableness is highly deferential, because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant."  *Bennett*, 485 F. App'x at 675 (quoting *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011)).

At sentencing, the district court considered the § 3553(a) sentencing factors, the factual information in the PSR, and all other information privy to the court.  The advisory Sentencing Guidelines as outlined in the PSR took

Appellants' lack of, or limited, criminal histories into account and nevertheless deemed life sentences appropriate.  As we have previously held, a sentence imposed within the Guideline range is entitled to a rebuttable presumption of reasonableness. *See United States v. Wyss*, 542 F. App'x 401, 408 (5th Cir. 2013).  Appellants can rebut the presumption "only upon a showing that the sentence does not account for a factor that should receive significant weight, gives significant weight to an irrelevant or improper factor, or represents a clear error of judgment in balancing sentence factors."  *Id.*  The life sentences imposed here, though long, were within the properly calculated Guideline range, which Appellants do not contest.  *Id.* (quoting *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006) ("If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines.")).

The district court justified Appellants' sentences at the sentencing hearing through a discussion of the impact of the gun and drug trade on the numerous co-conspirators and their families that have become collateral damage.  The district court's reflection addressed the acute violence that Lugo imposed on those who decided that they did not want to work for him.  The district court found that Appellants presented no evidence rebutting the representations found in the PSR or the trial record, save for Villalobos's counsel's policy arguments regarding disparities in sentencing between Appellants and their co-conspirators, which bears little weight here.  Accordingly, Appellants failed to rebut the presumption of reasonableness that applies here.  *See United States v. Romans*, No. 13-40219, 2016 WL 2957797, at *7 (5th Cir. May 19, 2016) (affirming a within-Guidelines sentence notwithstanding the long length of time appellant would likely remain in

prison); *United States v. Alvarado*, 691 F.3d 592, 597 (5th Cir. 2012) (concluding that appellant's "mere belief that the mitigating factors presented for the court's consideration should have been balanced differently is insufficient to disturb this presumption"). The court need not vacate a life sentence merely because Appellants' likely have many more years to live.[2]

Given the district court's consideration of the § 3553(a) factors and the serious nature of both Villalobos's and Lugo's offenses, the district court's imposition of life imprisonment sentences was substantively reasonable and free of error.

V.

For the foregoing reasons, we AFFIRM.

---

[2] Other circuits have dismissed similar arguments:

[Appellant's] emphasis on his 'youth' is simply misleading. He is . . . an adult able to understand the consequences of his actions. Although the indictment charged that the conspiracy began when [Appellant] was a teenager, [Appellant's] criminal conduct occurred largely, if not entirely, during his adulthood. As for [Appellant's] prowess as a boxer, the district court had no obligation to impose a lower sentence just so [Appellant] might pursue the boxing career he had already eschewed for a more lucrative life of crime. (We assume a much lower sentence would have been needed to allow [Appellant] to box outside prison while he is still young and healthy enough.) We sympathize with [Appellant's] young son, who undoubtedly deserved a better chance to have a father play a meaningful role in his life. But the district court reasonably concluded that [Appellant's] decision to pursue a life of crime showed his apparent disregard for his son's welfare, as well as for the welfare of those who were harmed by the cocaine [Appellant] helped distribute, and justified adherence to the guideline recommendation of life imprisonment. *United States v. Tanner*, 628 F.3d 890, 909 (7th Cir. 2010).