# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50596

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DEION DEE LOCKHART, also known as Memphis, also known as Deion
Lockhart; RICHARD CHARLES GRAY, also known as Crenshaw, also known
as Richard Gray; TIMOTHY KEITH MCCULLOUCH, JR., also known as TJ,
also known as Timothy McCullough, Jr., also known as Timothy Keith
McCullough, Jr.; EMMANUAL LOCKHART, also known as E. Jay,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.

CARL E. STEWART, Chief Judge:

Following a Federal Bureau of Investigation ("FBI") inquiry into a child
sex trafficking ring, a jury found Defendants-Appellants guilty of various crimes
charged in an eleven-count indictment. All four appeal the jury's guilty verdicts.
We AFFIRM each conviction, with one exception. Finding that the district
court's jury instructions regarding 18 U.S.C. § 1591 (Sex Trafficking of

No. 15-50596

Children) constructively amended the indictment, we VACATE and REMAND Appellant McCullouch's conviction as to that count.

## I. Background and Procedural History[1]

Between May 1, 2012 and March 31, 2013, Appellants prostituted underage girls, ranging from fifteen- to seventeen-years-old. After the National Center for Missing and Exploited Children discovered a suspicious advertisement featuring a sixteen-year-old girl on Backpage.com, a website notorious for facilitating prostitution, the FBI began collecting Appellants' hotel, phone, Facebook, and e-mail records. Through its investigation, the FBI learned that Appellants were pooling their money together to rent hotel rooms, solicit johns over the Internet, and transport underage girls to and from hotel rooms, in some cases crossing state lines to do so.

The conspiracy began when Appellants Deion Lockhart ("D. Lockhart"), Emmanual Lockhart ("E. Lockhart"), and Richard Gray ("Gray")[2]—all members of the Folk Nation Gangster Disciples ("Folk Nation") gang—decided to begin prostituting teenage girls instead of dealing drugs. After meeting the victims—SH, KB, LA, AG, and ANJ—and convincing them to "work" for them, the men used prepaid credit cards to post advertisements for escort services on Backpage.com. The men would then rent adjoining hotel rooms, using one room for "meeting dates" and the other for "hanging out."

Timothy McCullouch ("McCullouch"), another member of Folk Nation, became part of the conspiracy after he and Gray met ANJ and LA in a hotel room in June 2012. ANJ initially met Gray at a downtown club. She and Gray corresponded over Facebook, and eventually ANJ invited Gray and McCullouch to

---

[1] All relevant facts produced at trial and discussed herein are taken in the light most favorable to the jury's verdict. *See United States v. Haines*, 803 F.3d 713, 734–35 (5th Cir. 2015).

[2] The indictment also charged Brandon Shapiro and Tai Von Lynch, both of whom pleaded guilty to Count Nine of the second superseding indictment prior to trial and are not a party to this appeal.

meet her and LA in ANJ's hotel room.  When McCullouch entered the room, ANJ and LA both recognized him as an officer from the juvenile facility where they had been previously confined.  After this meeting, ANJ began living with and prostituting for McCullouch, and LA began prostituting for Gray.

To ensure that the girls continued working for them, Gray regularly beat LA while his coconspirators and the other victims watched.  The men controlled the girls' movements and forced them to give all of the money they earned to Appellants.  The victims testified that they felt they had no choice but to prostitute for the men.

Before trial, the district court denied E. Lockhart's motion to sever and Appellants' joint motion to exclude evidence of their gang affiliation.  The court also ruled that it would not admit evidence of the victims' prior or subsequent prostitution.  At trial, the Government solicited testimony from Officer Robert Ontiveros.  Through his testimony, Officer Ontiveros explained to the jury what his job as a gang investigator entails, the specialized training he had received, and his particular knowledge of Folk Nation.  After the court accepted him as a gang expert, he testified that all four of Appellants are confirmed Folk Nation members.

At the close of the Government's case-in-chief, all four Appellants moved for a Rule 29 judgment of acquittal as to each count against them, which the court denied.  At the close of the evidence, each Appellant renewed his motion, which the court again denied.

After deliberating, the jury found D. Lockhart guilty of Sex Trafficking by Force, Fraud or Coercion; Aiding and Abetting Sex Trafficking of Children; and Conspiracy to Sex Traffic Persons.  The jury acquitted Gray on Count Three, Sex Trafficking by Force, Fraud or Coercion with respect to KB, but found him guilty of Sex Trafficking by Force, Fraud or Coercion with respect to LA; Sex Trafficking of Children; Conspiracy to Sex Traffic Persons; and

No. 15-50596

Transportation for Prostitution. The jury found McCullouch guilty of Sex Trafficking of Children and Conspiracy to Sex Traffic Persons, and found E. Lockhart guilty of Conspiracy to Sex Traffic Persons.

On May 6, 2015, E. Lockhart filed a motion seeking an evidentiary hearing, as the jury found him guilty of only Count Nine, the conspiracy count, but had not specified on which object offense(s) it had based his guilt, as U.S.S.G. § 1B1.2 requires. The district court denied that motion. The court thereafter sentenced E. Lockhart to 240 months' imprisonment to be followed by five years' supervised release and sentenced Gray to life imprisonment, among other, lesser sentences to be served concurrently. In determining Gray's sentence, the court applied U.S.S.G. § 2A3.1(b)(1), thereby increasing his base offense level by four.

## II. DISCUSSION

Appellants raise a host of arguments on appeal. They first challenge the sufficiency of the evidence as to each of their convictions, and relatedly, the district court's denial of their motions for judgment of acquittal. They next assert that the district court erred in excluding evidence of the victims' prior- and post-indictment prostitution and in including evidence of their shared gang affiliation. E. Lockhart contends that the district court erred in denying his motion to sever and in applying U.S.S.G. § 1B1.2 to his sentence. McCullouch argues that the district court's jury instructions regarding 18 U.S.C. § 1591 constructively amended the indictment. Finally, Gray avers that the district court misapplied U.S.S.G. § 2A3.1(b)(4)(B) when it added a four-point enhancement to his offense level. We address each argument in turn.

### A. Sufficiency of the Evidence

We review the denial of a motion for judgment of acquittal de novo. *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003). Still, this court's review of a jury's verdict is "highly deferential." *United States v. McNealy*, 625

4

F.3d 858, 870 (5th Cir. 2010).  Thus, the relevant question is whether, "viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Clark*, 577 F.3d 273, 284 (5th Cir. 2009) (internal quotation marks omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

At trial, three of Appellants' victims and two coconspirators who had already pleaded guilty testified against Appellants.  These witnesses explained how the men decided to prostitute young girls instead of selling drugs, took turns posting advertisements to Backpage.com and shared the profits, and that Gray would regularly beat AG in front of the other coconspirators and victims.  The Government also presented physical evidence that linked Appellants to Backpage.com through e-mail and cell phone records, showed that Gray transported LA across state lines for the purpose of prostitution, and corroborated the witnesses' testimony with hotel rental receipts and Facebook conversations.  Finally, the victims' testimony demonstrated that Appellants knew, or at the least recklessly disregarded the fact that, their victims had not yet attained the age of eighteen.  Viewing this evidence "and all inferences to be drawn from it in the light most favorable to the verdict," *United States v. Burton*, 126 F.3d 666, 669 (5th Cir. 1997), a rational jury could find all four Appellants guilty beyond a reasonable doubt of the crimes for which the jury convicted them.

**B. Evidence of Prior and Post-Indictment Acts of Prostitution**

Appellants argue that the district court erred when it barred admission of evidence showing the victims' prior and subsequent acts of prostitution. They aver that Rule 412 applies primarily to rape cases, and that even if the Rule does apply to this case, barring the evidence violated their Fifth and Sixth Amendment rights.   We review the district court's limitation of cross-

examination for an abuse of discretion. *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004) (citing *United States v. Gordon*, 780 F.2d 1165, 1175 (5th Cir. 1986)).   When a defendant alleges that the district court's limitation violated a constitutional right, however, this court reviews that limitation de novo. *See United States v. Hitt*, 473 F.3d 146, 156 (5th Cir. 2006); *Gochicoa v. Johnson*, 118 F.3d 440, 445 (5th Cir. 1997).

In a "criminal proceeding involving alleged sexual misconduct," Rule 412 prohibits evidence offered "to prove that a victim engaged in other sexual behavior," as well as evidence offered "to prove a victim's sexual predisposition." Fed. R. Evid. 412(a).   Further, Rule 412(a) prohibits a defendant from introducing or eliciting evidence of the victim's "other sexual behavior," even if it is offered "as substantive evidence or for impeachment."   Fed. R. Evid. 412 (1994 Advisory Committee Notes).   Forced prostitution undoubtedly involves sexual misconduct.   Moreover, Appellants offer evidence of the victims' pre- and post-indictment acts of prostitution to prove their predisposition and to impeach their credibility.   Thus, Rule 412 applies here.

One exception to Rule 412, however, allows a defendant to introduce otherwise inadmissible evidence if the "exclusion would violate the defendant's constitutional rights."   Fed. R. Evid. 412(b)(1)(C).   In this case, Appellants allege that the district court's refusal to admit evidence of the victims' prior and subsequent prostitution violated their Fifth Amendment right to present a defense and their Sixth Amendment right to confront the witnesses against them.   We address each argument in turn.

### 1. Due Process Clause

The Fifth Amendment's Due Process Clause guarantees a defendant's right "to present evidence favorable to himself *on an element that must be proven to convict him*." *Clark v. Arizona*, 548 U.S. 735, 769 (2006) (emphasis added).   In this case, the Government must prove, *inter alia*, that Appellants

recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited each of the victims, while knowing or recklessly disregarding the fact "that means of force, threats of force, fraud, coercion . . . or any combination of such means [would] be used to cause" the victims "to engage in a commercial sex act." 18 U.S.C. § 1591(a).

Section 1591 defines "coercion" as, *inter alia*, "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person." *Id.* § 1591(e)(2)(B). The statute further defines "serious harm" as "any harm . . . that is sufficiently serious . . . to compel a reasonable person of the same background and in the same circumstances to perform or *to continue performing* commercial sexual activity in order to avoid incurring that harm." *Id.* § 1591(e)(4) (emphasis added). Thus, evidence of the victims' pre- and post-indictment acts of prostitution would be irrelevant to this case as it does not "make . . . more or less probable" the fact that Appellants caused their victims to engage in a commercial sex act during the time period alleged in the indictment. Fed. R. Evid. 401; *see United States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) (finding evidence of the victims' prior prostitution "would only prove *other* people may be guilty of similar offenses of . . . causing the[] victims to engage in a commercial sex act"); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) (finding that prior prostitution evidence is irrelevant, as "the fact that [the victim had] been a prostitute before does not suggest that [the defendant] didn't beat and threaten her").

Thus, evidence of the victims' pre- and post-indictment prostitution is not relevant to prove an element necessary to convict Appellants, *see Clark*, 548 U.S. at 769, and therefore, the district court did not violate the Fifth Amendment when it excluded such evidence pursuant to Rule 412. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer

testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

## 2. Confrontation Clause

The Confrontation Clause guarantees a defendant the opportunity for effective cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 19–20 (1985) (per curiam). That right, however, is not without limitations, and cross-examination limited on the basis of a Federal Rule of Evidence "do[es] not abridge an accused's right to present a defense so long as [the rule is] not 'arbitrary' or 'disproportionate to the purposes [it is] designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)); *see Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005).

The Advisory Committee has noted that, although prior convictions are normally admissible to impeach a witness under Rule 609, Rule 412 trumps that rule to the extent that the witness has previous convictions for prostitution. Fed. R. Evid. 412 (1994 Advisory Committee Notes). A defendant may, however, impeach victim-witnesses with other inculpatory evidence.

In the instant case, Appellants questioned the victims about their prior drug use, their possible bias against Appellants, whether they consented to prostitute for Appellants during the timeframe alleged in the indictment, and whether they were coerced into prostitution or motivated by money. Because Appellants were permitted to impeach the victims with this other inculpatory evidence, Rule 412's application to this case was "not 'arbitrary' or 'disproportionate to the purposes [it is] designed to serve.'" *Scheffer*, 523 U.S. at 308 (quoting *Rock*, 483 U.S. at 56).

Finally, because the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish," *Fensterer,* 474 U.S. at 20, the district court's refusal to admit evidence of the victims' prior and subsequent

prostitution under Rule 412 did "not abridge [Appellants'] right to present a defense." *Scheffer*, 523 U.S. at 308 (quoting *Rock*, 483 U.S. at 56). Accordingly, the district court did not err in excluding the evidence.

## C. Evidence of Gang Affiliation

Appellants raise several issues regarding the district court's decision to allow evidence of their gang affiliation to come before the jury. First, Appellants argue that Officer Ontiveros's testimony prevented them from confronting the witnesses against them, as he based his testimony on inadmissible hearsay in violation of the Fifth Amendment. Next, Appellants argue that admitting Officer Ontiveros as an expert was an abuse of discretion. In support of this claim, Appellants assert that Officer Ontiveros was not qualified to be an expert. They further contend that, because the subject area is one of common knowledge, there was no need for expert testimony on gang affiliation. Finally, Appellants argue that the court abused its discretion in admitting any evidence of their gang affiliation, as it was irrelevant to the instant matter and constituted inadmissible "other bad acts" evidence in violation of Rule 404(b).

## 1. Confrontation Clause

When the district court's ruling violates a criminal defendant's Sixth Amendment right to confrontation, reversal is required unless "the beneficiary of [the] constitutional error [can] prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). That said, before this court applies such an exacting standard of review, it must first find a constitutional violation.

In this case, Appellants rely on *Crawford v. Washington*, 541 U.S. 36, 68 (2004) in asserting that Officer Ontiveros was merely a conduit for testimonial hearsay. They point to the fact that during voir dire, Officer Ontiveros testified that some of his expertise is based on his participation in custodial

interrogations and events where other officers detailed their experiences during interrogations. This argument is without merit.

The record reflects that Officer Ontiveros's testimony was "not procured with [the] primary purpose of creating an out-of-court substitute for trial testimony." *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). "Although '*Crawford* forbids the introduction of testimonial hearsay as evidence in itself,' . . . 'it in no way prevents expert witnesses from offering their independent judgments merely because those judgments were in some part informed by their exposure to otherwise inadmissible evidence.'" *United States v. Palacios*, 677 F.3d 234, 243 (4th Cir. 2012) (quoting *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)). Therefore, "the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Bryant*, 562 U.S. at 359. Rule 703 allows an expert to base his testimony on otherwise inadmissible hearsay evidence. Fed. R. Evid. 703. An expert's opinion may be based on both the evidence in the case and his education and experience. *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971) (en banc). "Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." *Id.*

The interrogations and conferences Officer Ontiveros attended were part of his education as a gang expert, and he properly based his testimony on these experiences. Therefore, Officer Ontiveros did not serve as a conduit for inadmissible testimonial hearsay. Finding no constitutional violation, we

review this issue for abuse of discretion. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016).

## 2. Officer Ontiveros's Qualifications

Officer Ontiveros testified that he worked for the El Paso Police Department for twelve years and within the gang unit for nearly six years. He has special training related to gangs generally and Folk Nation in particular. Even if some jurors previously had a general understanding of gangs, Officer Ontiveros's testimony regarding Folk Nation specifically was helpful to the jury, and the district court did not abuse its discretion in admitting him as an expert. *See, e.g.*, *United States v. Griffith,* 118 F.3d 318, 322–23 (5th Cir. 1997) (finding a DEA agent with eight-and-one-half years and fifty investigations' worth of experience qualified to interpret drug jargon); *United States v. Garcia,* 86 F.3d 394, 400 (5th Cir. 1996) (holding that the district court did not abuse its discretion in qualifying a federal agent to explain a large drug operation).

## 3. Rule 404(b)

This court reviews a district court's decision to admit or exclude evidence for abuse of discretion. *United States v. Yi*, 460 F.3d 623, 631 (5th Cir. 2006) (citing *United States v. Cantu*, 167 F.3d 198, 203 (5th Cir. 1999)). "In a criminal case, Rule 404(b) evidence must 'be strictly relevant to the particular offense charged.'" *Id.* (quoting *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998)). If, however, the admission of the 404(b) evidence did not prejudice the defendant, this court will uphold the conviction. *Id.* (citing *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996)). The applicability of Rule 404(b) to this case depends upon whether evidence of Appellants' gang membership is intrinsic or extrinsic to the crimes charged. If the evidence is intrinsic, it is not *other* bad acts evidence at all, but rather additional facts surrounding the charge at issue. *See United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007); *see also United States v. Manning*, 79 F.3d 212, 218 (1st

Cir. 1996) (stating that Rule 404(b) only limits the admissibility of *extrinsic* evidence).

Because in an alleged conspiracy the existence of a joint venture and the nature of the members' relationship are at issue, evidence of defendants being members of the same gang is intrinsic to the crime of conspiracy. *United States v. Westbrook,* 125 F.3d 996, 1007 (7th Cir. 1997). In this case, gang evidence serves to complete the story as to why Appellants would work together, deciding to "leave the dope game alone" and take up prostituting women instead. *See United States v. Lugo-Lopez*, 833 F.3d 453, 461 (5th Cir. 2016) (citing *United States v. Chavful*, 100 F. App'x 226, 231 (5th Cir. 2004)) ("[The defendant's] alleged cartel involvement was also probative of his association with the other members of the conspiracy."). Therefore, the district court did not err in allowing this evidence to come before the jury.

### D. Motion to Sever

E. Lockhart contends that because the district court did not sever his trial from that of his codefendants', he was denied a fair trial. This court reviews a district court's denial of a motion to sever for abuse of discretion. *United States v. Clay*, 408 F.3d 214, 219 (5th Cir. 2005). A district court should grant a motion to sever defendants who were charged in the same indictment only if there is a serious risk that a joint trial would compromise a defendant's specific trial right, or if the jury would be unable to make a reliable assessment about guilt or innocence. *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Nguyen*, 493 F.3d 613, 625 (5th Cir. 2007). Finding that E. Lockhart failed to show the requisite prejudice to warrant severance, we affirm the district court's judgment as to this issue. *See United States v. Cortinas*, 142 F.3d 242, 249 (5th Cir. 1998) (affirming district court's denial of a motion to sever because defendants (1) were members of the same gang as

coconspirators and (2) the timing of their involvement coincided with the gang's involvement).

### E. U.S.S.G. § 1B1.2

E. Lockhart argues that because neither the jury nor the district court specified which of the charged offenses was the object of the conspiracy on which the jury based his guilt, this court should partially reverse and remand his conviction for resentencing.

This court reviews the application of U.S.S.G. § 1B1.2(d) de novo; factual findings underlying its application are reviewed for clear error. *United States v. Sylvester*, 143 F.3d 923, 931 (5th Cir. 1998). A sentence will be upheld unless it was imposed in violation of the law, which occurs either as a result of an incorrect application of the Guidelines, or if the sentence is outside the range of the applicable Guideline and is unreasonable. *United States v. Wyjack*, 141 F.3d 181, 183 (5th Cir. 1998).

Under U.S.S.G. § 1B1.2(d), "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Further, "[i]n such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense." *Id.* (cmt. n.4). Findings can be either explicit or implicit based on the record as a whole. *United States v. Manges*, 110 F.3d 1162, 1179 (5th Cir. 1997); *United States v. Fisher*, 22 F.3d 574, 577 (5th Cir. 1994).

Here, although neither the district court nor the jury specified from which of the base offenses E. Lockhart's guilt stems, it is implicit from the record. *See Fisher*, 22 F.3d at 577 (affirming the district court's sentence because there was "'more than sufficient' evidence" of the defendant's guilt on

the record).  At sentencing, the court concluded that E. Lockhart "provided the tools that would enable the other coconspirators to engage in the conduct that resulted in the convictions on each case as to each co-defendant."  The court further noted that Lockhart "helped pool money for the securing of hotels.  He helped participate in encouraging individuals to engage in the activity" and that "much of what he did was significant to the accomplishment of the continued activities of the conspiracy that resulted in the pimping of young individuals."  Finding "ample evidence to support the requisite implicit findings," we affirm E. Lockhart's sentence.  *See id.*

### F. Constructive Amendment

Title 18 U.S.C. § 1591 allows the Government to prosecute anyone who knowingly forces an underage person into prostitution.  18 U.S.C. § 1591.  Although § 1591 allows the Government to prove scienter by showing that the defendant (1) knew the victim was underage, (2) recklessly disregarded that fact, or (3) had a reasonable opportunity to observe the victim, McCullouch argues that because the "reasonable opportunity to observe" language was not included in the indictment, but was included in the jury instructions, the court constructively amended the indictment.

We review constructive amendment claims de novo.  *United States v. Thompson*, 647 F.3d 180, 183 (5th Cir. 2011).  If we conclude that there has been a constructive amendment, we must reverse the defendant's conviction.  *United States v. Chambers*, 408 F.3d 237, 241 (5th Cir. 2005) (citing *United States v. Adams*, 778 F.2d 1117, 1123 (5th Cir. 1985)).  A constructive amendment occurs "when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged" in the indictment.  *Adams*, 778 F.2d at 1123.

The seminal case on this issue is *Stirone v. United States*, 361 U.S. 212 (1960).  In *Stirone*, the U.S. Supreme Court considered whether there had been

a constructive amendment of the indictment in a Hobbs Act prosecution. The indictment charged the defendant with using his union position to "unlawfully obstruct, delay [and] affect interstate commerce . . . and movement of [sand] by extortion." *Id.* at 213–14. Over defense counsel's objection, the district court allowed the Government to bring "evidence of an effect on interstate commerce not only in sand . . . but also in interference with steel shipments." *Id.* at 214. The trial court's jury instructions allowed the jury to convict the defendant on either basis. *Id.* Assuming there was sufficient evidence on the record to convict the defendant under either theory and that the evidence did not surprise the defendant, the Third Circuit affirmed the conviction. *United States v. Stirone*, 262 F.2d 571, 574 (3d Cir. 1958).

The Supreme Court reversed, concluding that "when only one particular kind of commerce is charged to have been burdened[,] a conviction must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Stirone*, 361 U.S. at 218. Therefore, even assuming there was sufficient evidence on the record to prove a Hobbs Act violation pertaining to sand *and* steel, because the indictment alleged only that the violation related to sand, the court constructively amended the indictment when it broadened it to include steel. *Id.* at 215; 218–19.

We have interpreted *Stirone* many times. When the indictment alleges a particular set of facts as forming the basis for the defendant's violation of a statute, but the trial court allows evidence of other facts not alleged in the indictment to form the basis of the jury's guilty verdict, this court finds a constructive amendment. *E.g.*, *United States v. Hoover*, 467 F.3d 496, 502 (5th Cir. 2006) (alleging one false statement in indictment but proving another at trial was constructive amendment); *United States v. Doucet*, 994 F.2d 169, 170–73 (5th Cir. 1993) (finding constructive amendment where indictment

15

charged with "assembled" gun, but was potentially convicted for possessing a "combination of parts from which a machine gun can be assembled"); *Adams*, 778 F.2d at 1123–24 (vacating because indictment listed "false name" but Government proved both "false name" and "false address," and the court allowed conviction on either basis); *United States v. Davis*, 461 F.2d 83, 91 (5th Cir. 1972) ("Since the Government chose to charge a section 1708 violation in a particular manner, we hold that in any conviction pursuant to that indictment the prosecution is bound by the particular allegations contained therein and it cannot obtain a conviction by proof of a violation of the same statute in a manner not alleged.").

In *United States v. Chambers*, for example, the indictment alleged that the defendant possessed "rounds" distributed by a particular manufacturer. 408 F.3d at 238–39. At trial, however, the Government presented evidence of the defendant's possessing ammunition *components*, rather than completed rounds. Notably, the statute cited in the indictment allowed for conviction under either theory. This court, in concluding that the trial court had constructively amended the indictment, pointed out that:

> [I]n *Stirone* there was no departure from the indictment in respect to what the defendant did, or when, where or to whom he did it, or what his conduct immediately threatened . . . . Nor was there any departure from the indictment so as to allow conviction under any different language segment or portion of the statute alleged in the indictment.

*Id.* at 242. Because the Government established an essential element of the offense on the basis of facts wholly different from those particularized in the indictment, we vacated the jury's guilty verdict. *Id.* at 247.

The essential element at issue here is § 1591's scienter requirement. *See United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013) (stating that the defendant's mens rea is an essential element under § 1591). Subsection (c) states that "[i]n a prosecution under subsection (a)(1) in which the

defendant had a reasonable opportunity to observe the person . . . the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years."  18 U.S.C. § 1591(c).

The indictment alleged in pertinent part that McCullouch "kn[ew] and . . . reckless[ly] disregard[ed] . . . the fact that . . . A.N.J., had not attained the age of eighteen years (18) . . . in violation of Title 18, United States Code, Sections 1591(a)(1),(2), and (b)(2)," but did not include the "reasonable opportunity" language found in subsection (c).  Thus, we must ask whether the district court constructively amended the indictment when it instructed the jury that McCullouch could be convicted under § 1591

> IF THE GOVERNMENT PROVES BEYOND A REASONABLE DOUBT THAT [MCCULLOUCH] HAD A REASONABLE OPPORTUNITY TO OBSERVE THE PERSON [HE] RECRUITED, ENTICED, HARBORED, TRANSPORTED, PROVIDED, OBTAINED, OR MAINTAINED, [EVEN IF] THE GOVERNMENT [DID NOT] PROVE THAT THE DEFENDANT KNEW THAT [ANJ] HAD NOT ATTAINED THE AGE OF 18 YEARS.

By including the language found in § 1591(c), the district court materially modified an essential element of the indictment by transforming the offense with which the indictment charged McCullouch[3] from one requiring a specific mens rea into a strict liability offense.  *See United States v. Copeland*, 820 F.3d 809, 813 (5th Cir. 2016) (concluding that under § 1591(c), "the

---

[3] Although a reversal of McCullouch's conviction on this count also implicates Gray's conviction for the same offense, because Gray did not object to the jury instruction in the district court, the standard of review differs as to him, requiring that Gray show plain error, which he cannot.  *See United States v. Scher*, 601 F.3d 408, 411 (5th Cir. 2010).  Review under plain error requires reversal only if "(1) there is an error, (2) that is clear or obvious, and (3) that affects [the defendant's] substantial rights."  *Id.* (quoting *United States v. Ferguson,* 211 F.3d 878, 886 (5th Cir. 2000)).  Even if Gray demonstrates these factors, "the decision to correct the forfeited error is within the sound discretion of the court, and the court will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* (citing *Ferguson*, 211 F.3d at 886).  Given the substantial evidence against him, we decline to exercise our discretion here.

Government 'need not prove any *mens rea* with regard to the defendant's awareness of the victim's age.'" (quoting *United States v. Robinson*, 702 F.3d 22, 34 (2d Cir. 2012))).   Given the district court's inclusion of subsection (c), it is possible that the jury "convict[ed McCullouch] based on an alternative basis permitted by the statute, but not charged in the indictment," *United States v. Partida*, 385 F.3d 546, 557 (5th Cir. 2004) (citing *United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001)), a possibility that constructively amended the indictment, *see Partida*, 385 F.3d at 557 (stating that constructive amendment occurs when jury instructions make it possible for the jury to convict on an alternative basis not alleged in the indictment).

It is conceivable that someone could recklessly disregard a person's age without having a reasonable opportunity to observe him or her.[4]   Therefore, although McCullouch was ANJ's juvenile detention officer, it is possible that the jury believed ANJ looked so different from when she was detained that McCullouch did not recognize her, thus he did not *know* she was underage. Further, the jury could have concluded that, although he spent time with her, McCullouch's disregard for her youth was not "reckless."   In that way, it is plausible that the jury convicted McCullouch on a theory that even though he did not know her age or recklessly disregard it, he did have a reasonable opportunity to observe her.   The Government's closing argument makes this possibility especially true:

> We don't have to prove knowledge.  If they come up here and say, "You have to acquit because they didn't know that these girls were under 18," remember, that's not what the law says.  You can also prove it by reckless disregard.  *But it goes even further.  If the government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe the person . . . then the*

---

[4] For example, in *United States v. Phea*, 755 F.3d 255, 260 (5th Cir. 2014), the defendant, having never seen the victim, recklessly disregarded her age when he discovered that she did not have identification sufficient to allow her to fly on an airplane.

*government does not have to prove that the defendant knew that the person had not attained the age of 18. Beyond reckless disregard. Beyond knowledge. If these gentlemen had contact or a reasonable opportunity to observe these girls, we don't have to prove that they were—that they knew that they were under the age of 18.* So when they come up here and talk to you about, "Well, he didn't know she was under age," remember this provision of the law that is before you in the jury charge.

(emphasis added).    Accordingly, because the district court's instructions allowed the jury to "convict [McCullouch] based on an alternative basis permitted by the statute, but not charged in the indictment," *Partida*, 385 F.3d at 557 (citing *Daniels*, 252 F.3d at 414), we vacate and remand McCullouch's guilty verdict as to this count.

## G. U.S.S.G. § 2A3.1(b)(4)(b)

Gray argues that the district court plainly erred when it added a four-point enhancement to his offense level, asserting that the facts stated in his PSR were erroneous.  He also argues that his sentence is unreasonable.

We review the district court's sentencing decisions for reasonableness, *United States v. Anderson*, 559 F.3d 348, 354 (5th Cir. 2009), and its interpretation of the sentencing guidelines de novo, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). "A sentence will be upheld so long as it results from a correct application of the guidelines to factual findings that are not clearly erroneous." *United States v. Medina-Saldana,* 911 F.2d 1023, 1024 (5th Cir. 1990).  Section 2A3.1(b)(1) provides for a four-level enhancement "[i]f the offense involved conduct described in 18 U.S.C. § 2241(a) or (b)." U.S.S.G § 2A3.1(b)(1).  18 U.S.C. § 2241(a) pertains to "[w]hoever . . . knowingly causes another person to engage in a sexual act (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to . . . serious bodily injury." 18 U.S.C. § 2241(a)(1)–(2).  The record and the PSR contain multiple examples of Gray's viciously

beating LA.  These incidents are sufficient to show that Gray used force against LA and placed her in fear that she would be subjected to serious bodily injury. Both the beatings and the fear of future harm caused LA to engage in commercial sex acts.  Therefore, the district court did not err in applying U.S.S.G § 2A3.1 to Gray.  Gray's sentence, which falls within the Guideline range, is presumptively reasonable, *see United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006), and he has presented no evidence sufficient to rebut that presumption.  Therefore, we affirm his sentence.

## III. CONCLUSION

In summary, we AFFIRM in part, and VACATE and REMAND in part. We AFFIRM each of Appellants' convictions, except McCullouch's conviction for Sex Trafficking of Children in violation of 18 U.S.C. § 1591(a).  We VACATE and REMAND McCullouch's conviction and sentence as to that count.