# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 17-41251

———

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHARLES DEVAN FULTON, SR., also known as Black, also known as Blacc,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 29, 2019

Lyle W. Cayce
Clerk

———

Appeal from the United States District Court
for the Southern District of Texas

———

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A jury convicted Charles Fulton, Sr. on four counts of sex trafficking and one count of conspiracy. The most significant issue concerns a long-delayed search of his cell phone. Fulton also makes arguments premised on the Confrontation and Grand Jury clauses, and he challenges the sufficiency of the evidence. We find no basis to disturb the judgment. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2014, a Galveston juvenile probation officer learned from the father of a juvenile she supervised that the girl was pictured in an online advertisement offering her services as an "escort," or in effect, a prostitute.

No. 17-41251

The probation officer began to investigate and saw that a particular house where the girl had been arrested was a location where other young girls consistently were arrested. She began monitoring incoming police reports, spoke with some of the girls, compiled a list of names and ages, and gathered information from other probation officers. Her investigation revealed common links among the girls: Charles Fulton, Sr. and a residence on Avenue L. In February and early March 2015, the Galveston Police Department, in tandem with the FBI, began an investigation. Police discovered that Fulton acted as the girls' pimp, directing them to prostitution dates; providing them with food, condoms, housing, and drugs; and having sex with some of them as young as 15.

In May 2016, Fulton was indicted in the U.S. District Court for the Southern District of Texas on six counts of sex trafficking in violation of 18 U.S.C. § 1591(a)–(b) (2015), with a different minor victim identified in each count. Fulton was also charged with a seventh count for conspiracy to commit sex trafficking under 18 U.S.C. § 1594(c). He was found guilty after a jury trial on four of the substantive counts and on the conspiracy count. The district court sentenced him to prison for concurrent life terms.

## DISCUSSION

We will analyze four issues. First, Fulton asserts the district court admitted evidence obtained from his cell phone in violation of the Fourth Amendment. Second, he argues the district court violated the Confrontation Clause by prohibiting him from questioning one of the minor victims about a purported aggravated assault charge. Third, he argues that special findings made by the jury in two of his counts of conviction were not supported by

No. 17-41251

sufficient evidence.   Finally, Fulton contends the district court violated the Grand Jury Clause by constructively amending the indictment.[1]

## I.     *Search of Fulton's phone*

In February 2015, Galveston police obtained a search warrant on the Avenue L house where the prostitution was based, but the warrant was part of a separate investigation into Fulton's narcotics activities.   Fulton's cell phone was seized.   Nine days later, police obtained a second warrant to examine its contents but were unable to bypass the phone's security features. Around this same time, the FBI agent assisting with the Fulton sex-trafficking investigation learned that the Galveston police had the phone.   The agent acquired it to determine if the FBI could access the phone's data.   Three weeks later, that agent obtained a federal warrant to search the phone.   Still, it was a year later before the data on the phone was accessed.   The FBI discovered evidence on the phone that helped piece together Fulton's involvement with the minor victims.   Fulton moved to suppress the evidence, but the district court denied the motion.   At trial, the Government introduced evidence of the phone's contents through the testimony of the FBI agent and of minor victims. The district court also admitted evidence such as text messages, a photograph, and the results of searches of the phone's files for specific terms, linking Fulton to five minor victims and behaviors consistent with sex trafficking.

---

[1] At trial, Fulton also raised issues bearing on Jencks Act, *Brady*, and *Giglio* material. *See* 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).   At oral argument in this court he requested that we review the district court's determinations on these issues.   In his brief he mentioned his request for *Brady* material and suggested we "review the propriety of the district court's determinations."   We will not consider such "passing reference[s]" that are devoid of legal analysis. *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) (citation omitted).

No. 17-41251

On appeal, Fulton argues that the phone's seizure in the February 2015 raid violated the Fourth Amendment.  He alternatively argues that even if the initial seizure had been lawful, the nine-day delay in obtaining a warrant to search it was unconstitutional.  At oral argument, Fulton's counsel stated that those two arguments are the limit of the objections to the search and seizure.  Thus, no issue is made about the FBI's obtaining the phone, procuring its own search warrant, and finally accessing the data on the phone a year later.

We review a ruling on a motion to suppress "in the light most favorable to the verdict," accepting "the district court's factual findings unless clearly erroneous or influenced by an incorrect view of the law" and reviewing "questions of law *de novo*."  *United States v. Carrillo-Morales*, 27 F.3d 1054, 1060–61 (5th Cir. 1994).  The disagreements here are ones of law.  We review the sufficiency of the warrant authorizing the seizure of Fulton's phone *de novo*.  *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002).  We also review the district court's determination of the reasonableness of a search or seizure *de novo*.  *United States v. Jones*, 133 F.3d 358, 360 (5th Cir. 1998).

*A.     Whether the narcotics warrant authorized the phone's seizure*

We start with whether the initial seizure of the phone was proper.  Fulton contends "the warrant did not particularly describe the phone as one of the items to be seized."  The Constitution states that a warrant should not issue without "particularly describing" what is to be seized. U.S. CONST. amend. IV.  A warrant's particularity is sufficient if "a reasonable officer would know what items he is permitted to seize," which does not mean all items authorized to be taken must be specifically identified.  *United States v. Aguirre*, 664 F.3d 606, 614 (5th Cir. 2011).  "We have upheld searches as valid under the particularity requirement where a searched or seized item was not named

4

in the warrant, either specifically or by type, but was the functional equivalent of other items that were adequately described." *Id.*

This narcotics warrant did not refer to telephones. The alleged functional equivalent was a reference to "ledgers." A "ledger" is a "book . . . ordinarily employed for recording . . . transactions." *Ledger*, OXFORD ENGLISH DICTIONARY (2d ed. 1989). We have held that a "cell phone . . . used as a mode of both spoken and written communication and containing text messages and call logs, served as the equivalent of records and documentation of sales or other drug activity." *Aguirre*, 664 F.3d at 615. Here, the officer who took Fulton's phone was a nine-year veteran of his department's narcotics unit. He testified at the suppression hearing to a belief the phone was used in narcotics activity. The belief was reasonable, making this cell phone the equivalent of a ledger. The narcotics warrant authorized the seizure of Fulton's phone. We need not discuss the Government's alternative arguments.

### B.     *Whether the nine-day delay was unreasonable*

We have just held that Galveston Police were authorized to seize Fulton's cell phone based on the warrant they obtained. That warrant, though, which did not identify any specific electronic devices, necessarily did not explicitly provide for a search into the contents of such devices either. A warrant to search the cell phone was obtained nine days after the seizure. Fulton says that delay invalidated the search. It is true that "a seizure reasonable at its inception . . . may become unreasonable as a result of its duration." *Segura v. United States*, 468 U.S. 796, 812 (1984).

An initial question arises from the fact that Galveston police obtained a warrant before ever seizing the phone. Might that warrant be all that was needed to conduct the later search of the phone's contents? The warrant itself only sought the *seizure* of certain items. There is divergent authority on

whether a specific warrant to search contents that are seized is needed.  One circuit has held that a warrant that expressly authorized seizure of a cell phone could permit on-site search of a phone's contents without exigent circumstances.  *United States v. Fifer*, 863 F.3d 759, 766 (7th Cir. 2017).  We see a different emphasis in a scholarly work stating that "if a search warrant specifically names a cellphone only as one of the objects to be seized, absent exigent circumstances a search warrant will thereafter be required to authorize a search of that cellphone."  2 WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.11(a) (5th ed. Updated Oct. 2018)).

The Government does not argue that the warrant for the seizure of "ledgers" would have permitted the search of the ledger-like phone's contents.  We move on, then, to the issue we will resolve:  was it reasonable here to delay nine days between the warrant-based seizure of the phone and the issuance of a warrant authorizing a search of its contents?

We find no caselaw addressing our specific facts, namely, a seizure of a cell phone that was authorized by a warrant, then several days followed until a warrant to search the contents of the phone was obtained.  Courts, though, have wrestled with the effect of delay in obtaining a search warrant following a seizure that was proper for other reasons, such as a seizure of a computer based on consent as in *United States v. Laist*, 702 F.3d 608, 610–11 (11th Cir. 2012), or based on probable cause and exigent circumstances, *see United States v. Burgard*, 675 F.3d 1029, 1031–32 (7th Cir. 2012).  Such caselaw is analogous to our situation because in each case the seizure of the device was valid but a warrant was needed to learn what was hidden within.

In evaluating post-seizure reasonableness, we "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government interests."  *Freeman v. City of Dallas*, 186 F.3d 601, 605 (5th Cir. 1999).  This circuit has not detailed any

criteria for balancing. Other circuits have considered such questions as the reasons for the delay in the issuance of a warrant; whether a suspect acted to diminish or increase his privacy and possessory interests in the seized item, such as giving the item to a third party or requesting the item's return from police; and to what extent the item's seizure affected other interests of the suspect, such as interfering with travel because of the seizure of luggage at an airport. *See United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998); *United States v. Stabile*, 633 F.3d 219, 235–36 (3d Cir. 2011); *Burgard*, 675 F.3d at 1033–34. Some circuits have developed lists of specific factors. *See Laist*, 702 F.3d at 613–14; *Burgard*, 675 F.3d at 1033.

Instead of presuming to announce a test for all cases, we simply conclude that in this case, the salient considerations for determining the balance between the private and the public interests start with the fact that, before seizing the phone, the Galveston police obtained a warrant that was issued based on probable cause and that authorized the phone's seizure. The initial action by an independent magistrate reduces concerns about the seizure.

Important on the defendant's side of the balance, the owner of a cell phone has significant privacy interests in the device. *See Riley v. California*, 134 S. Ct. 2473, 2489 (2014). The fact that a cell phone can be the functional equivalent not only of a ledger but of so much more means its seizure can have a substantial impact on an individual.

Despite the potential impact we just noted, we also consider it important that Fulton did not promptly assert his interest in retrieving the phone from police. He was released the same day he was arrested but there was no evidence he sought the return of his phone. A Seventh Circuit opinion held it to be relevant that the defendant "asserted his possessory interests . . . by voluntarily going to the police station to obtain a property receipt." *Burgard*, 675 F.3d at 1034. No such action was taken here.

What is somewhat difficult to assess is the Government's diligence in seeking a warrant to search the phone.  The officer who seized the phone and subsequently obtained the search warrant testified that he did not believe obtaining a warrant was a priority because the phone was "evidence."  It would seem that at least this officer saw no urgency and may have been indicating his belief Fulton had lost his right to the phone until his office and prosecutors no longer needed it.  In determining the balance of interests, we place on the scale the Government's "relative diligence."  By that we mean there is not an abstract obligation to make acquiring a warrant authorizing a further search the immediate priority after seizure of any property.  Assessing diligence is affected by other considerations, such as the nature of the item seized and any demands for its return.  We conclude that the Government as to this cell phone was neither indifferent nor zealous about the need to get a search warrant.

As to length of time, that is less an independent consideration than simply the measure of the effect of other factors such as law-enforcement diligence.  The delay of nine days here is similar to the six-day delay in obtaining a search warrant for a cell phone in *Burgard*, 675 F.3d at 1034.  There, the court found the delay not to be "the result of complete abdication of [the officer's] work or failure to 'see any urgency.'" *Id.*  We conclude that a nine-day delay before acquiring a search warrant in this case, reflecting some attentiveness but not zeal by police, was reasonable.

On balance, the Government's interests in seizing the phone, then allowing time for its proper search, prevail over Fulton's interests.  The introduction of evidence resulting from the search of the cell phone's contents is not improper due to the nine-day delay in obtaining a search warrant.

No. 17-41251

*II.     Confrontation Clause violation regarding a witness*

Fulton argues that he was improperly limited on the range of cross-examination of a witness.  The Government called Minor Victim 3 to testify.  She admitted that the FBI agent investigating the sex trafficking case sought her assistance and that she initially refused to help.  She also admitted that she later contacted the FBI agent after she was jailed apparently on state charges.  She changed her mind again later, resisted testifying, and appeared at trial only after being brought to court under a material-witness warrant.

Fulton wanted to cross-examine her on what Fulton understood to be an aggravated assault arrest in her "juvenile history" to probe her motives for contacting the FBI agent.  Fulton sought to impeach her on the theory that she contacted the FBI agent thinking he could help her "get off that aggravated assault charge."  There is no indication that any assault charge was related to Fulton's offense.  The district court refused to let Fulton pursue this line of questioning.  Counsel was permitted to ask if "any member of law enforcement offered [her] any kind of . . . benefit in exchange for testifying."  Fulton argues this restriction violated his Sixth Amendment right to confrontation.

We review alleged Confrontation Clause violations *de novo*.  *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006).  We analyze "whether the jury had sufficient information to appraise the bias and motives of the witness."  *United States v. Templeton*, 624 F.3d 215, 223 (5th Cir. 2010) (citation omitted).  Fulton "need only show that 'a reasonable jury might have received a significantly different impression of the witness's credibility had defense counsel been permitted to pursue his proposed line of cross-examination.'"  *Id.* (citation omitted).  In the context of purported deals with the Government, it does not matter whether an agreement was reached: "What counts is whether the witness may be shading his testimony in an effort to please the prosecution."  *Greene v. Wainwright*, 634 F.2d 272, 276 (5th Cir.

9

1981).  At the same time, the Confrontation Clause does not permit a defendant to cross-examine a witness if there are sufficient concerns of "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

Fulton relies primarily on *Davis v. Alaska*, 415 U.S. 308 (1974).  The defendant there was convicted in state court based on "crucial" testimony from a juvenile who was on probation after having previously been adjudicated delinquent in state court for two burglaries.  *Id.* at 310–11.  The defendant wanted to introduce the witness's juvenile record for these reasons: the witness may "have made a hasty and faulty identification of petitioner to shift suspicion away from himself as one who [actually committed the crime, and the witness] might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation."  *Id.* at 311.  Instead of the juvenile record's being admitted, the defendant was allowed to ask questions about the witness's state of mind in cooperating with the police.  *Id.* at 311–13.  This limitation violated the Confrontation Clause. *Id.* at 318.  Without the specificity of the juvenile record, jurors "might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness."  *Id.*

Fulton argues that Minor Victim 3 had reason to alter her testimony in a federal prosecution in order to receive assistance in a state juvenile proceeding.  We consider the fact that this witness's prosecutions were by two different sovereigns on two unrelated crimes to be critical.  *Davis* is based on the fact that state prosecutors had the ability and perhaps some reason to charge that witness with the same offense and perhaps also could have affected his state probation on two other burglary offenses; the witness had ample motivation for identifying a different culprit.  *Id.* at 317-18.  We see no reason

to make such assumptions when the witness appeared in a federal court trial and the separate matter was in state court. "[N]othing in the record or pleadings suggest[ed] that the federal prosecutor could have influenced any state juvenile-court proceedings and thereby provided an inducement for the victims to testify in the federal trial." *United States v. Miller*, 538 F. App'x 501, 501 (5th Cir. 2013) (citing *United States v. Thorn*, 917 F.2d 170, 176 (5th Cir. 1990) (proper to limit cross-examination when there was no showing federal prosecutors could influence an unrelated state prosecution of a witness)).

We conclude that Fulton has not shown that the witness had a reason to be biased based on the unrelated offense. We also conclude that the effect of limiting impeachment on this witness was minimal, as ample other evidence existed of Fulton's guilt of this offense. The district court did not err in not allowing Fulton to probe this witness about any state charge.

## III.  *Sufficiency of evidence on special findings*

The statute of Fulton's convictions on the substantive counts required that he either knew or recklessly disregarded (1) "that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the [victim] to engage in a commercial sex act" or (2) "that the [victim] has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a) (2015). Fulton was convicted on four of these substantive counts. For two of them, Counts 2 and 7, the district court instructed the jury to look only for the second of the two possible findings. Conviction on those counts is not contested.

On Counts 4 and 6, the district court instructed the jury that it could make either finding. Accordingly, the jury entered special findings on Counts 4 and 6 that Fulton "used force, threats of force, fraud or coercion" and "at the time of the offense, the victim had attained the age of 14 years but had not

attained the age of 18 years." Fulton argues there was insufficient evidence for the jury to find he "used force, threats of force, fraud or coercion" on these two counts.

Fulton moved in the district court for a judgment of acquittal after the Government's case-in-chief. He renewed the motion after his own case-in-chief. Consequently, we review his evidentiary sufficiency contentions *de novo*; the analysis considers "all evidence in the light most favorable to the verdict" and asks "only whether the jury's decision was rational, not whether it was correct." *United States v. Lewis*, 774 F.3d 837, 841 (5th Cir. 2014) (citations omitted).

There is evidence Fulton used force and threats with the minor victims associated with Counts 4 and 6. There was testimony he threatened to "beat . . . up" one victim. He also hit the other victim because she was leaving him, making "a big handprint on [her] face." That victim further testified Fulton choked her for "talking to other guys." There was also testimony that Fulton emotionally and financially manipulated the victims so as to support a finding of coercion. *See* § 1591(e)(2), (e)(4) (2015).

Even if this evidence were not sufficient, Fulton's convictions would be unaffected. Either one of the special findings in Counts 4 and 6 supported a conviction under Section 1591(a). A finding of force, threats, fraud, or coercion carried a minimum sentence of 15 years; a finding that the victim "had attained the age of 14 years but had not attained the age of 18 years" carried a minimal sentence of 10 years. § 1591(b). Either finding carried a maximum sentence of life. *Id.* Even if we hold the findings of force, threats, fraud, or coercion were not supported by sufficient evidence, it remains true the jury found the victims to be younger than 18. That leaves Fulton guilty under Counts 4 and 6 with a maximum sentence of life, which he received for both. We leave his convictions on Counts 4 and 6 undisturbed.

No. 17-41251

IV.   *Grand Jury Clause violation*

The final issue concerns what is argued to be effectively an improper amendment of the indictment concerning Fulton's knowledge of the age of his victims.  Section 1591(a) permits the Government to convict a defendant on alternative theories.  For one of the theories, the Government is not required to prove that the defendant "knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." § 1591(c).  Instead, the evidence only has to prove that "the defendant had a reasonable opportunity to observe the" victim.  *Id.*   Fulton's indictment does not mention this "reasonable opportunity to observe" concept.

Fulton argues on appeal that the district court imported this concept into the case by giving this jury instruction: "If the Government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe the [alleged victims] . . . then the government does not have to prove that the defendant knew that the person had not attained the age of 18 years."  Fulton argues this instruction allowed the jury to convict on a basis broader than that stated by the indictment.  He did not make this argument in district court.

Our analysis starts with the special role of indictments under our constitution: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. CONST. amend V.  A district court errs by "permit[ting] the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict [a] defendant on a materially different theory or set of facts than that with which she was charged."  *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011) (citation omitted).

In one precedent we discussed the exact issue presented by Fulton.  There, an indictment charged two defendants under Subsections 1591(a) and

(b)(2) "but did not include the 'reasonable opportunity' language found in [S]ubsection (c)." *United States v. Lockhart*, 844 F.3d 501, 515 (5th Cir. 2016). As here, the district court instructed the jury using Subsection (c) language. *Id.* We held "the district court materially modified an essential element of the indictment by transforming the offense . . . the indictment charged . . . from one requiring a specific *mens rea* into a strict liability offense." *Id.* at 515–16 (emphasis added).

That error caused us to reverse the judgment of conviction of one defendant but not of the other. *Id.* at 516. Prejudice need not be shown *if a timely objection* is made in the district court to the violation of the right to be tried only by a properly issued indictment; only one of the two *Lockhart* defendants objected. *Id.* at 515–16, 515 n.3. His was the judgment of conviction we vacated. *Id.*

His codefendant did not object to the broadening of the indictment, and we reviewed his conviction for plain error. *Id.* at 515 n.3. We will reverse a conviction for plain error only when: "(1) [the instruction] was erroneous; (2) the error was plain; and (3) the plain error affected the substantial rights of the defendant." *United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001). Even if those requirements are met, we will exercise discretion to reverse the district court only if "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citation omitted). We held in *Lockhart* that regardless of the first three factors of plain error review, we would decline to exercise our discretion to reverse because of the "substantial evidence against" the defendant. *Lockhart*, 844 F. 3d at 515 n.3.

The evidence against Fulton was also "substantial," and we refuse to vacate his convictions based on the jury instruction.

AFFIRMED.