# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 18-50682

————

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

JESSE SANTIBANEZ, also known as "Jay", also known as Jesse Santibanos, also known as Jay Santibanez; ALFREDO CARDONA, also known as "Freddy Low", also known as Alf Cardona, also known as Val A. Rendon, also known as Alfred Cardona, III, also known as Fred Cardona, also known as Alfred Cardona, also known as Fred Cardona, III,

Defendants-Appellants

————

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:15-CR-387-3
USDC No. 5:15-CR-387-2

————

Before JONES, ELROD, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Jesse Santibanez and Alfredo Cardona were convicted by a jury of murder in aid of racketeering and using and discharging a firearm during and in relation to a crime of violence, specifically violent crimes in aid of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50682

racketeering.  The district court sentenced them to life imprisonment on each count, to be served concurrently, and five years of supervised release on each count, to be served concurrently.  They timely appealed.

First, Cardona argues that the district court erred in allowing the testimony of Raymond Tellez, a former member of the Texas Mexican Mafia, that Tellez had been involved in an arson and four murders as a TMM member. This court reviews the district court's decision to admit or exclude evidence for abuse of discretion.  *United States v. Yanez Sosa*, 513 F.3d 194, 199 (5th Cir. 2008).

The district court allowed the Government to introduce Tellez's testimony to prove that the TMM was an enterprise engaged in racketeering activities and to corroborate the testimony of a Federal Bureau of Investigation special agent concerning the TMM's organization and activities.  *See United States v. Jones*, 873 F.3d 482, 492 (5th Cir. 2017).  In closing argument, the Government reasserted that the purpose of Tellez's testimony was to show that the TMM was an enterprise engaged in racketeering activities.  In cases involving enterprises engaged in racketeering activities, the Government may introduce the testimony of former gang members to prove that the gang was an enterprise engaged in racketeering activities.  *See, e.g., United States v. Velasquez*, 881 F.3d 314, 329–30 (5th Cir. 2018); *Jones*, 873 F.3d at 490–91.

Even if the admission of the testimony had been error, Cardona would have failed to show that allowing this testimony substantially prejudiced his rights.  *See United States v. Valas*, 822 F.3d 228, 240 (5th Cir. 2016).  Tellez did not testify that Cardona was involved in any of Tellez's criminal activities. Moreover, the Government introduced overwhelming evidence that Cardona committed the murder of the victim in order to advance his position in the TMM and that he used a firearm during this offense, including the testimony

of FBI agents, current and former TMM members, and Cardona's ex-girlfriend; historical cell site location data; gang rosters; video footage of the victim's murder; and gunshot residue evidence. In view of this overwhelming evidence, Cardona has not shown that the admission of Tellez's testimony substantially prejudiced his rights. *See id.*, 822 F.3d at 240. The district court did not abuse its discretion in allowing Tellez's testimony concerning his own offenses committed while he was a TMM member. *See Velasquez*, 881 F.3d at 336.

Cardona next contends that the district court erred in denying his motion for a mistrial based on an FBI agent's testimony that Cardona's ex-girlfriend received threatening text messages from the then-incarcerated Cardona that were sent from a smuggled cell phone. The testimony was elicited during cross-examination by Santibanez's counsel. Cardona's counsel did not object immediately, but counsel did object at a subsequent bench conference; the district court overruled the objection because it was late.

Cardona has not shown error under either the plain error or abuse of discretion standard. *See id.*, 881 F.3d at 343. The testimony at issue was elicited by Santibanez's counsel, and not the Government. The testimony was relevant to Cardona's consciousness of guilt. *See United States v. Rocha*, 916 F.2d 219, 241 (5th Cir. 1990). In view of the overwhelming evidence against him, Cardona has not demonstrated that after a review of the entire record, there is a significant possibility that this testimony concerning the threatening text messages had a "substantial impact on the jury's verdict." *United States v. Valles*, 484 F.3d 745, 756 (5th Cir. 2007). Therefore, Cardona has not shown that the district court's denial of his motion for a mistrial was error. *See Velasquez*, 881 F.3d at 343; *Valles*, 484 F.3d at 756.

In addition, Cardona contends that the district court erred in allowing his ex-girlfriend to testify that Cardona assaulted her by holding a gun to her

face and that he was a convicted felon on parole.  The witness's statements were unsolicited.  After her statement that Cardona had held a gun to her face, the district court immediately told the Government to move on, and the Government did so.  After the other statements, Cardona's counsel objected, and the district court overruled Cardona's objection and declined to grant a mistrial but instructed the jury to disregard these statements.  Any prejudice caused by the statements that Cardona was a convicted felon on parole were rendered harmless by the court's curative instructions because the jury is presumed to follow the court's instructions.  *See United States v. Richardson*, 781 F.3d 237, 246 (5th Cir. 2015).

The gun-in-the-face remark was a single reference in a six-day trial; neither party returned to the statement. *See Velasquez*, 881 F.3d at 344.  The reference was an inadvertent comment by a witness and the government immediately moved on.  In view of the overwhelming evidence against him, Cardona has not shown that there is a significant possibility that any of the statements had a substantial impact upon the jury's verdict.  *See Valles*, 484 F.3d at 756.

Finally, Cardona asserts that the district court erred in allowing the Government to present evidence that when he was arrested a few weeks after the murder, he was in possession of drugs.  The evidence was relevant to show that Cardona participated in the TMM's drug trafficking, one of the racketeering activities of the TMM enterprise alleged in the second superseding indictment.  Evidence arising out of the same TMM enterprise as the charged offense was not extrinsic evidence under Federal Rule of Evidence 404(b). *See United States v. Guerrero*, 768 F.3d 351, 365 (5th Cir. 2014); *United States v. Krout*, 66 F.3d 1420, 1425 (5th Cir. 1995).  Further, in view of the overwhelming evidence against him, Cardona has not shown that the

admission of this evidence substantially prejudiced his rights. *See Valas*, 822 F.3d at 240. Therefore, Cardona has not shown that the district court abused its discretion in allowing the admission of this evidence. *See id.*

Santibanez argues that the district court violated his rights under the Confrontation Clause and abused its discretion in limiting his cross-examination of Cardona's ex-girlfriend concerning her public comment on Facebook made about six months before the trial, stating that she intended to "come down here and kick a--."[1] Santibanez's counsel thoroughly cross-examined her concerning payments she received from the Government for her cooperation and the lack of criminal charges against her despite her involvement in drug trafficking and helping Cardona and Santibanez after the murder. On cross-examination, she also admitted that her relationship with Cardona had ended and that she had called in a police tip before the murder and had contacted the media afterward.

Santibanez's counsel sought to introduce the Facebook post to show that the witness was excited to "come down here [*i.e.* the courthouse] and kick a--." Yet that Facebook post was made six months before the trial. The post about an unrelated matter could not provide the jury with any "information to appraise the bias and motives of the witness." *United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993). The court's limitation of cross-examination, which was based on the Federal Rules of Evidence, did not abridge Santibanez's right to present a defense. *See United States v. Lockhart*, 844 F.3d 501, 510 (5th Cir. 2016); *United States v. Hitt*, 473 F.3d 146, 156 (5th Cir.

---

[1] Santibanez also states that he adopts the legal arguments of Cardona to the extent that they may be reasonably extended to his case. Rule 28(i) of the Federal Rules of Appellate Procedure allows, in a case involving more than one appellant or appellee, an appellant to adopt by reference a part of another's brief. FED. R. APP. P. 28(j). However, "an appellant may not adopt by reference fact-specific challenges to his conviction." *United States v. Morgan*, 117 F.3d 849, 853 (5th Cir. 1997). In any event, as shown above, Cardona's arguments are without merit.

No. 18-50682

2006).  Further, Santibanez has not shown that a reasonable juror would have received a significantly different impression of the witness's credibility if he had been allowed to cross-examine her concerning the Facebook post.  *See United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004).  Therefore, the district court did not violate Cardona's rights under the Confrontation Clause or abuse its discretion by limiting his cross-examination of this witness.  *See Lockhart*, 844 F.3d at 510; *Hitt*, 473 F.3d at 156.

AFFIRMED.